[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 686 
The First Bank of Boaz (bank) foreclosed on property owned by Nelwyn and Louis Eugene Pankey (collectively, Pankey). The bank subsequently sold the property to David and Yetta Daugette. Pankey made a written demand for an itemized statement of all lawful charges claimed for redemption of the property. Within the statutory time period, on August 18, 1993, the Daugettes responded with an itemized statement, and on August 25, 1993, Nelwyn Pankey filed a complaint to redeem the property, alleging, inter alia, that the statement of charges was inaccurate and excessive. She submitted a $100,000 certified check to the circuit court clerk and offered to pay any additional sums necessary, as determined by the trial court, for redemption of the property. The Daugettes' statement of charges indicated that the amount due for redemption was $124,341.28. Ultimately, Louis Eugene Pankey was added as a party to this action.
The Daugettes answered, denying all allegations, and they subsequently filed an amended answer and a counterclaim, alleging, among other things, that Pankey had failed to tender the appropriate amount necessary to redeem, and that the trial court, therefore, lacked subject matter jurisdiction. In their counterclaim, the Daugettes alleged that the Pankeys had executed and delivered a promissory note to the bank, and that after foreclosure and the subsequent sale of the foreclosed property, a deficiency was due on the note in the amount of $12,329.38. The Daugettes contended that the bank had assigned the note and all rights regarding collection *Page 687 
of the deficiency to them. The record indicates that the assignment was done in September 1993.
Following ore tenus proceedings, the trial court found that the amount due for redemption, at the time this action was initiated, was substantially greater than the amount tendered by the Pankeys for redemption. The trial court found that, as of September 3, 1994, the amount due from the Pankeys to redeem was $122,687.50. The trial court further found that, separate from, and in addition to, the amount due for redemption, the Pankeys owed the Daugettes $18,810.13, as the balance due on the note not paid by the proceeds of the foreclosure.
The Pankeys' post-judgment motion contested only the trial court's holding that the date of the filing of the complaint did not qualify as the date of redemption. They subsequently filed a supplement to their post-judgment motion, contending that interest was erroneously calculated, and that the charges for permanent improvement were excessive. In response to those motions, the trial court entered an order further explaining and interpreting that part of its judgment regarding redemption, amending its computation of attorney fees on the separate judgment regarding the deficiency, and denying all other relief. The Pankeys appeal. This case was transferred to this court by our Supreme Court, pursuant to Ala. Code 1975, § 12-2-7.
This appeal involves the following issues: (1) whether the requirements of Ala. Code 1975, § 6-5-252, concerning an itemized statement of lawful charges, were met; (2) whether the value of permanent improvements must be paid if the party seeking to redeem fails to nominate a referee, as required by Ala. Code 1975, § 6-5-254; (3) whether the date the complaint was filed qualifies as the date of redemption; and (4) whether the party seeking to redeem is entitled to collect rent from the holders of the property as compensation for occupation where no rental income is collected by the holders.
The testimony of Joe Wooten, loan officer and vice president of the bank, is briefly summarized as follows. The bank foreclosed on the Pankeys' property because of their default on a promissory note that was secured by a mortgage on the property. The balance due on the note, on the date of the foreclosure, was $96,955.46, which included principal, interest, and expenses. The bank purchased the property at the foreclosure sale for $85,000, and subsequently sold it to the Daugettes for $97,500. The bank later assigned to the Daugettes the right to the deficiency due on the Pankeys' note. The Pankeys made no additional payments toward the debt evidenced by the note after the foreclosure.
Nelwyn Pankey testified that she made a demand for an itemized statement of the debt and all lawful charges claimed for redemption of the foreclosed property, and that the Daugettes provided a written response. She stated that she sought the fair rental value of the property, estimated by her to be $1800 a month, since the time she filed her complaint for redemption.
David Daugette testified that the Daugettes received no notice from the Pankeys about arbitrating or negotiating any amount that was claimed as the amount necessary to redeem. The parties stipulated to the submission of the Daugettes' answers to interrogatories in lieu of lengthy testimony concerning permanent improvements. Also, the trial court viewed a videotape, as Daugette testified and Nelwyn Pankey commented, indicating the condition of the residence and the property when the Daugettes first moved in. Daugette testified that it appeared that maintenance "had been neglected for some time," and he further testified regarding some of the expenses incurred and some of the numerous repairs and improvements that the Daugettes had made to the property.
Coy Graben, a realtor and owner of a real estate company, testified that he had handled the sale of real estate for approximately 20 years. He testified that when the Daugettes first acquired the property, he personally observed it, including the interior and exterior of the residence and the surrounding property; that the property was in need of much work outside, including the removal of a large pile of trash and several items of *Page 688 
junk; that the entire interior of the house, needed a thorough cleaning and maintenance; that junk and trash needed to be disposed of; and that the carpet was in a very bad condition. He also testified that having a survey performed and a termite bond in place would affect the value or purchase price of a house.
Graben further testified that he visited the property a few months after the Daugettes' purchased it, and on that visit, he noticed that they had made the necessary improvements, including cleaning and maintenance to restore the house and property. He testified that the house was worth approximately $125,000 to $130,000 when initially purchased by the Daugettes, and $150,000 to $155,000 after their improvements. He attributed approximately $10,000 of the increase in value to an increase in the fair market value of houses in general.
Pankey first argues that the Daugettes forfeited all claim or right to compensation for permanent improvements because they failed to furnish a written itemized statement of permanent improvements, citing only Ala. Code 1975, § 6-5-252, to support this contention. Section 6-5-252 states that if the purchaser fails to provide the redeeming party with an "itemizedstatement of all lawful charges within 10 days after demand, . . . [the purchaser] shall forfeit all claims or right to compensation for improvements." (Emphasis added.)
Our review of the record reveals that the Daugettes provided the Pankeys with a written itemized statement, including the purchase price paid, property taxes paid, insurance paid, calculation of interest, and a list of 18 specific permanent improvements, with their value. Ala. Code 1975, § 6-5-253, states that lawful charges include permanent improvements, taxes paid or assessed, and all insurance premiums paid or owed by the purchaser. Pankey simply failed to show that the itemized statement provided by the Daugettes failed to comply with the statutory requirements. See DeJonker v. McCaig,628 So.2d 575 (Ala. 1993). Furthermore, Pankey raises this issue for the first time on appeal. Jaffe Corp. v. Board of Adjustment ofCity of Sheffield, 361 So.2d 556 (Ala.Civ.App. 1977).
Pankey next argues that the trial court incorrectly found that they had to pay the value placed by the Daugettes on the permanent improvements because they failed to nominate a referee. Ala. Code 1975, § 6-5-254, in pertinent part, states:
 "(a) Any person offering to redeem must pay to the then holder of the legal title the value of all permanent improvements made on the land since the sale. . . . In response to written demand made under section 6-5-252, the then holder of the legal title shall . . . furnish the proposed redemptioner with the amount claimed as the value of such permanent improvements; and within 10 days after receipt of such response, the proposed redemptioner either shall accept the value so stated by the then holder of the legal title or, disagreeing therewith, shall appoint a referee to ascertain the value of such permanent improvements and in writing notify the then holder of the legal title of his or her disagreement and of the fact and name of the referee appointed by him or her. . . .
 "(b) If a person offering to redeem fails or refuses to nominate a referee . . . he or she must pay the value put upon the improvements by the then holder of the legal title."
(Emphasis added.)
The record discloses that Pankey failed to appoint a referee to resolve any disagreement as to permanent improvements. By the express terms of this statute, Pankey must pay the "value put upon the improvements" by the Daugettes. It appears, however, that our Supreme Court has created an exception to strict compliance with this statute, which requires, as a prerequisite to filing a complaint for redemption, that the party seeking to redeem appoint a referee to resolve any disagreement as to permanent improvements. Our Supreme Court stated that "when other charges are in dispute," the applicable statute "does not require the appointment of a referee."Ross v. Edwards, 541 So.2d 507, 509 (Ala. 1989). Arguably, the purchase price paid and, therefore, the interest thereon, were in dispute. *Page 689 
The trial court's order states, "in the alternative, the court finds the value of such improvements was at least $10,597.50." Section 6-5-254 concerns the market value of the improvements and not the cost. Wallace v. Beasley,439 So.2d 133 (Ala. 1983). Further,
 "[N]ecessary permanent improvements have a well defined meaning in this jurisdiction, which is to preserve the property by properly keeping it in repair for its proper and reasonable use, having due regard for the necessities of each subject as to its kind and character. This includes not only ordinary repairs to restore the property after injury, decay, storm, flood, or fire, etc., but also valuable and useful additions and improvements to the property suited to its reasonable necessities, character and use."
Rodgers v. Dixon, 239 Ala. 72, 74, 193 So. 741, 743 (1940); see also Moore v. Horton, 491 So.2d 921 (Ala. 1986). Generally, a permanent improvement is anything that enhances the value of the property. Moore, supra.
Where testimony is presented to the trial court ore tenus, the trial court's findings of fact will not be disturbed on appeal, and its judgment is presumed correct, unless it is found to be plainly and palpably wrong. Ross, 541 So.2d 507;Wallace, 439 So.2d 133. The Daugettes offered receipts, bills, vouchers, statements, and canceled checks to substantiate their claim regarding the cost and value of the improvements. Graben and others testified regarding the increased value of the property after the improvements were made by the Daugettes. Additionally, the trial court viewed a videotape showing the property after the Daugettes took possession of it. Pankey offered nothing to rebut this evidence. Accordingly, after reviewing the record, we cannot hold that the trial court's finding as to the value of permanent improvements was plainly and palpably wrong.
The next question presented concerns whether Pankey is entitled to collect rent from the Daugettes for occupation of the property when no rent or income was collected by the Daugettes. Ala. Code 1975, § 6-5-253(c), provides that the purchaser is entitled to all rents paid or accrued on the property until the date of redemption. The redemptioner is entitled to all rents and profits accruing subsequent to the redemption date. Wallace, 439 So.2d 133. Our Supreme Court stated that "a purchaser in possession of land as purchaser under a valid foreclosure is the absolute owner and is not chargeable with rent in respect to another whose rights were foreclosed." Wallace, 439 So.2d at 136. Accordingly, Pankey could demand only rents and profits collected by the Daugettes, had any been collected by them, and the Daugettes owe no rent to Pankey for the time of their occupation of the property.Wallace, 439 So.2d 133.
Last, Pankey argues that the trial court erred in finding that the filing date of the complaint did not qualify as the date of redemption. The date of redemption is important for the computation of interest.
Ala. Code 1975, § 6-5-253(a), states, in pertinent part, that "[a]nyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser . . . the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments . . . and all other lawful charges, also with interest." Our Supreme Court has stated that "in order to redeem the redemptioner must pay to the purchaser, or into court, the amount required to redeem or provide an adequate excuse to the court for his failure to do so." Wallace, 439 So.2d at 136.
Ordinarily, if the statutory requirements are met, the date of redemption is deemed to be the date the complaint to redeem was filed. Wallace, 439 So.2d 133. The date of redemption, however, does not occur until the redeeming party has paid or tendered the amounts due, given an adequate and valid excuse for not doing so, "or shown an inability to ascertain the amount due, asked the aid of the court in determining the amount, and offered to pay the amount." Hicklin v. Old ShipAfrican Methodist Episcopal Zion Church, 574 So.2d 822, 826
(Ala.Civ.App. 1990). Literal compliance with the statute may be excused under certain circumstances; *Page 690 
otherwise, payment is a condition precedent to redemption. SeeRhoden v. Miller, 495 So.2d 54 (Ala. 1986). The inclusion of improper or questionable charges, standing alone, is not a valid excuse for failure to tender the amount owed. Moore,491 So.2d 921. The party seeking to redeem must exercise due diligence to ascertain the proper amount to be tendered, and before one side can seek the aid of the court, a bona fide disagreement between the parties regarding the lawful charges must exist. Moore, supra.
The trial court found that to redeem, Pankey had to pay to the purchasers, the Daugettes, or pay into the court
 "[a]t the least . . . the $85,000.00 for which the property was purchased by the bank, $10,597.50 in permanent improvements $675.25 for property taxes due in October 1993 (and $1,369.00 in 1994) or the pro rata share that had accrued as of September 1994 and hazard insurance in the amount of $1,178.00 (and $1,249.00 for 1994) plus accrued interest. The total of said sums (due at the time suit was filed) substantially, at the time suit was filed, exceeds the $100,000.00 tendered by [Pankey]. . . . Accordingly the court finds and holds that the filing of the complaint by [Pankey] does not qualify as the date of redemption."
(Emphasis in original.) Apparently, the trial court found that Pankey did not have a valid excuse for tendering less than the minimum amount due for redemption. We find no error in the trial court's judgment.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.