On Rehearing Ex Mero Motu

STUART, Justice.
This Court’s opinion of June 17, 2011, is withdrawn, and the following is substituted therefor.
EB Investments, L.L.C. (“EB Investments”), and Pavilion Development, L.L.C. (“Pavilion”), have filed separate appeals challenging elements of an order entered by the Madison Circuit Court holding that Pavilion was entitled to redeem certain property in Madison County in which EB Investments and multiple other parties held legal interests. We consolidated the appeals for the purpose of writing one opinion. We now dismiss both appeals.
*134 I.
This action was initiated on March 21, 1997, when Pavilion, then operating as John Lary, L.L.C., initiated an action to redeem 19 acres of land purchased by JBJ Partnership (“JBJ”) at a foreclosure sale on March 22, 1996. In the years since, this Court has issued three opinions deciding various issues stemming from Pavilion’s attempted redemption of that property. See Pavilion Dev., L.L.C. v. JBJ P’ship, 979 So.2d 24 (Ala.2007); EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502 (Ala.2005); and Ex parte Atlantis Dev. Co., 897 So.2d 1022 (Ala.2004). Additional facts describing the background of this dispute can be found in those opinions; however, the basic facts are as follows.
In August 1991, James E. Pace, James P. Pace, and William B. Pace (“the Pace family”), doing business as Pace Properties (“Pace”), sold approximately 22 acres of unimproved property in Madison County to Gallop Enterprises, Inc. (“Gallop”), a development company operated by Richard Tracey. The transaction was financed by Pace and in exchange for the land Gallop gave a promissory note secured by a mortgage on the property to Pace in the principal sum of $1,735,000. Gallop then obtained additional financing from Ben H. Walker, Inc. (“Walker”), to develop a subdivision on the property, and in return Gallop gave Walker a second mortgage on the property with a principal value of $149,999. Gallop thereafter began developing the planned subdivision; however, after completing the first phase of the project and paying Pace approximately $295,990 obtained from sales of lots in the subdivision, Gallop had exhausted the funds advanced by Walker and could not proceed with the second phase of the subdivision project. Under the threat of foreclosure, Gallop filed a petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code.
In April 1995, under the supervision of the bankruptcy court, the parties reached a settlement agreement wherein Gallop stipulated that it owed $1,439,010 to Pace and $149,999 to Walker. Pace also agreed to loan Gallop up to an additional $200,000 so that Gallop could complete development of the property and could then pay its debts to Walker and Pace with proceeds obtained from selling developed lots in the subdivision. In conjunction with the settlement agreement, Gallop executed 3 new mortgages on the 19 acres left in the development tract, which mortgages had the following priority: 1) a mortgage in favor of Pace securing a $200,000 loan (“the development mortgage”); 2) a mortgage in favor of Walker securing the $149,999 note; and 3) a mortgage in favor of Pace securing the $1,439,010 loan. The settlement agreement and the new mortgages were all then recorded in the Madison County Probate Judge’s Office.
By December 1995, Gallop was again in default on its obligations, and Pace instituted foreclosure proceedings. On March 22, 1996, the property was sold to JBJ — a new partnership made up of the Pace family — at a foreclosure auction for $100,000. The Pace family thereafter paid off the Walker note and continued developing the property on its own, conveying parcels and interests in the property as follows:
1) On June 6, 1996, JBJ conveyed a permanent drainage easement over a portion of the property to the City of Huntsville.
2) On June 10, 1996, JBJ conveyed one lot to Asghar D. Pourhassani.
3) On September 20, 1996, JBJ conveyed two lots to Atlantis Development Company, Inc. (“Atlantis”). Atlantis thereafter executed multiple mortgages on that property in favor of Jacobs Bank and JBJ.
*135 4) On January 16, 1997, JBJ conveyed another lot to Atlantis, which lot Atlantis resold to Fritz and Louise Nelson on that same day.
On March 1, 1997, Gallop, acting through Tracey, sent a letter to JBJ stating that Gallop intended to exercise its statutory right of redemption, see § 6-5-247 et seq., Ala.Code 1975, and to redeem the 19 acres it had lost in foreclosure. Gallop accordingly requested that JBJ provide it with an itemized statement of the lawful charges it would need to pay to complete the redemption and simultaneously requested that JBJ loan Gallop those funds. On March 9, 1997, Gallop sent similar notices requesting statements of lawful charges to Pourhassani and Atlantis. On March 13, 1997, after JBJ had advised Tracey that it did not recognize his authority to exercise Gallop’s right of redemption, Tracey transferred Gallop’s right of redemption to Pavilion, a company operated by his former brother-in-law John Lary and then still known as John Lary, L.L.C., in return for $1,000.
On March 21, 1997, Pavilion initiated this litigation by filing a redemption action in the Madison Circuit Court. Both before and after filing suit, Pavilion continued to make requests for statements of charges from assorted parties with interests in the property, and some produced the requested statements.[1] Over the following months and years, a host of counterclaims, cross-claims, and separate lawsuits encompassing all manner of contract and tort claims were filed by various parties who had interests in the property or who were otherwise drawn into the dispute. This Court has already considered some of the issues related to those claims beginning with Ex parte Atlantis Development, in which we denied a petition for a writ of mandamus filed by Atlantis in a separate action initiated in February 2003 by JBJ and Pace claiming that Atlantis had defaulted on promissory notes secured by mortgages on the property it had purchased from JBJ.[2] In EB Investments, we reversed in part a judgment issued in yet another separate action, this one filed in January 2004 by EB Investments (which now owned the mortgages Atlantis had originally executed in favor of Jacobs Bank) seeking to eject Atlantis from the lots Atlantis had purchased from JBJ in September 1996.[3] Finally, in August 2007, we decided an appeal in the instant action in which we reversed a summary judgment entered by the trial court in favor of JBJ and against Pavilion, holding that the trial court had erred when it concluded that Tracey lacked the authority to transfer Gallop’s right of redemption to Pavilion and holding that Pavilion did in fact hold the right to redeem the 19 acres at issue. See Pavilion Development, 979 So.2d at 37. We remanded the cause to the trial court for further proceedings, and, from March 1 through March 5, 2010, the trial court held a bench trial limited to deciding Pavilion’s redemption claim. On May 27, 2010, the trial court entered its amended final judgment, which summarized the court’s conclusions as follows:
*136 “In summary, the court finds that [Pavilion] is entitled to redeem the property described in its original complaint.- In order to perfect and complete its redemption, Pavilion must deposit into the office of the Clerk of the Circuit Court of Madison County, Alabama the sum of $3,770,348.90, plus all accruing interest and delinquent fees from March 10, 2010, to the date of payment, within 30 days from the date of this judgment. [Pavilion] shall be entitled to a credit against this sum for all monies it placed on deposit with the Clerk of Circuit Court of Madison County following [Pavilion’s] filing of this suit, including accrued interest. Upon payment into court of all sums required, each of the current title holders of the property to be redeemed shall deliver to the Clerk of the Circuit Court a deed conveying all of the transferors’ right, title and interest in each lot or parcel of property to [Pavilion] and shall be paid by the Clerk all sums due in accordance with this judgment. Specifically, upon redemption as set forth in this order, the Clerk is directed to distribute the funds as follows:
“a. $2,804,472 jointly to [the Pace family];
“b. $930,001 to [Atlantis];
“c. $35,875.99, plus all accruing interest and delinquent fees from March 10, 2010, to the date of payment to the Tax Collector of Madison County, Alabama.
“If [Pavilion] fails to pay all sums required by this order within 30 days from this judgment, [Pavilion] will be held to have forever waived its right to redeem the subject property. Should any posttrial motion or notice of appeal be filed in this case, all times stipulated herein shall be stayed pending resolution of such posttrial motions or appeal subject, however, to the continuation of interest on all sums due at the same rates as set forth herein, plus all accruing interest and delinquent fees from March 10, 2010 to the date of payment. All other claims for relief not specifically addressed herein are denied. Costs are taxed as paid.”
On July 30, 2010, the trial court denied the remaining postjudgment motions and certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. EB Investments and Pavilion each now appeal that judgment.
II.
EB Investments and Pavilion take opposing sides on most of the legal issues in this case; however, they both argue that the trial court’s judgment is not an appeal-able judgment because it does not address all the pending issues and resolve all the pending claims in this case. JBJ and the Pace family, which have filed a response to both appeals, argue that the trial court’s order is sufficient and urge this Court to end this long-running dispute. For the reasons that follow, we dismiss these appeals and offer the following guidance to the trial court to help expedite a resolution in this case.
On January 23, 1999, the trial court entered an order severing Pavilion’s redemption claim from the other cross-claims, counterclaims, and third-party claims that had been filed in the action. JBJ and the Pace family argue that the trial court acted within the wide discretion granted it by Rule 42(b), Ala. R. Civ. P., in doing so and that the trial court’s order should accordingly be viewed as a final judgment subject to immediate appeal, explaining:
“By entering this order, the trial court intended to address the claims and issues raised by the Pavilion complaint *137 seeking to exercise the right of redemption first before turning to the other claims filed later. Logically, this was a wise decision in that the other claims were dependent upon whether or not Pavilion indeed had the right to redeem and, if it did, whether or not Pavilion would actually choose to exercise that right by making all payments found by the trial court to be due.”
(JBJ and the Pace family’s brief in case no. 1091667, pp. 39-40.) See also Ex parte Humana Med. Corp., 597 So.2d 670, 671 (Ala.1992) (“The trial court has wide discretion in ordering separate trials and in severing claims, and the trial court’s decision in that regard will be reversed only if it abused that discretion. Ex parte R.B. Ethridge & Associates, Inc., 494 So.2d 54 (Ala.1986). ‘[A]bsent an abuse of discretion, the trial court will be allowed to “shape the order of trial” through the provisions of Rule 42, [Ala. R. Civ. P.].’ Ex parte Marcrum, 372 So.2d 313, 315 (Ala.1979). See, also, Black v. Boyd, 251 F.2d 843 (6th Cir.1958). Likewise, when claims have been severed pursuant to Rule 21, [Ala.] R. Civ. P., the trial judge has even more discretion to ‘shape the order of trial.’ ”). We agree with JBJ and the Pace family that the trial court had the discretion to order an initial trial on Pavilion’s redemption claim. Accordingly, the trial court did not exceed its discretion by declining to resolve all the pending claims, including the dispute between EB Investments and Atlantis, “until such time as Pavilion has either perfected or waived its right to redeem [the property].”
 However, a judgment on Pavilion’s redemption claim should fully resolve that claim and resolve all outstanding issues concerning lawful charges and revived liens so that Pavilion can make an informed decision as to whether it wishes to complete redemption of the property or forever waive that right. The trial court’s judgment fails to do so in at least three respects. First, the trial court’s judgment fails to address the City of Huntsville’s interest in the property. Huntsville obtained from JBJ a permanent drainage easement over a portion of the property on June 6, 1996, and is accordingly entitled to compensation for that interest if Pavilion redeems the property. Pavilion may not elect to forgo redemption of Huntsville’s interest while redeeming the rest of the property because “[t]he law does not allow piecemeal redemption, absent an agreement providing for it,” Costa & Head (Birmingham One), Ltd. v. National Bank of Commerce of Birmingham, 569 So.2d 360, 363 (Ala.1990), and there is no evidence indicating that the mortgage foreclosed upon contained a provision allowing for piecemeal redemption. It is unclear if Huntsville constructed any improvements to the property in accordance with its interest for which it would be due compensation, and, if it did not, the trial court may well find, as it did with the property held by Pourhassani (who also submitted no evidence of improvements to the lot he owned), that the sum set out as being due JBJ necessarily included the amount required to redeem Huntsville’s interest also. In that case, the specific amount due Huntsville from the sum awarded JBJ could be determined after Pavilion elects to complete redemption of the property, if it in fact does so. However, in light of the possibility that Huntsville could be entitled to some compensation directly from Pavilion for lawful charges, its interest should be addressed by the trial court before we consider an appeal of a judgment deciding the redemption claim.
Similarly, the trial court’s order fails to award any compensation to the Nelsons, who, on January 16, 1997, purchased a lot from Atlantis that Atlantis *138 had earlier purchased from JBJ. The trial court declined to award any compensation to the Nelsons because of a settlement agreement entered into by the Nelsons and Pavilion whereby Pavilion agreed not to redeem the Nelsons’ lot and the Nelsons agreed not to pursue any claims against Pavilion. However, as noted supra, “[t]he law does not allow piecemeal redemption.” Costa & Head, 569 So.2d at 363. As this Court further explained in Shealy v. Golden, 897 So.2d 268, 272-73 (Ala.2004):
“Once one or more tracts of land are sold at a foreclosure sale, the manner in which those tracts are divided up determines the units in which those tracts ‘may and must’ be redeemed. Redemption must be made in such units; therefore, piecemeal redemption of a portion of that unit is prohibited.”
(Footnote omitted.) At the foreclosure sale on March 22,1996, the property Pavilion now seeks to redeem was sold to JBJ as a single 19-acre unit for $100,000. Thus, notwithstanding the fact that JBJ later began parceling off the property, Pavilion is required to redeem the entire 19-acre tract if it wishes to redeem the property at all. The trial court indicated in its judgment that the Nelsons properly and timely provided Pavilion with a statement of charges. Following the dismissal of these appeals, the trial court should accordingly calculate the lawful charges Pavilion would owe the Nelsons in order to complete redemption of their lot.
Finally, the trial court’s order stated that the development mortgage Gallop executed in favor of Pace as part of the April 1995 settlement agreement would be revived upon redemption and thereafter remain a superior lien upon the property. See § 6-5-248(d), Ala.Code 1975 (stating that, when “any [party] redeem[s], all recorded judgments, recorded mortgages, and recorded liens in existence at the time of the sale, are revived against the real estate redeemed and against the redeeming party....”). However, the trial court did not determine the balance of the loan secured by the development mortgage. The April 1995 settlement agreement originally capped the balance at $200,000; however, JBJ and the Pace family argue that the agreement was later modified, and they claim that the balance due is now $282,778. Pavilion asserts that the balance is only $154,386. Pavilion argues that the trial court’s failure to decide the balance due on the loan secured by the development mortgage would likely result in a subsequent foreclosure action involving issues intertwined with the issues in this case and that the trial court’s Rule 54(b) certification was accordingly improper. We agree that the trial court should rule on this issue before we consider an appeal of the other elements of the trial court’s judgment. Doing so will not only lessen the risk of future litigation involving these issues, but also allow Pavilion to make its decision whether to redeem the property with full knowledge of the liabilities it would be assuming by doing so.
III.
“This Court looks with some disfavor upon certifications under Rule 54(b).
“ ‘It bears repeating, here, that “ ‘[certifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.’ ” State v. Lawhorn, 830 So.2d 720, 725 (Ala.2002) (quoting Baker v. Bennett, 644 So.2d 901, 903 (Ala.1994), citing in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala.1987)). “ ‘ “Appellate review in a piecemeal fashion is not favored.” ’ ” Goldome Credit Corp. [v. Player, 869 So.2d 1146, 1148 (Ala.Civ.App.2003)] (quoting Harper Sales Co. v. Brown, *139 Stagner, Richardson, Inc., 742 So.2d 190, 192 (Ala.Civ.App.1999), quoting in turn Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala. Civ. App.1996)) (emphasis added).’
“Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala.2004).”
Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala. 2006). For the reasons set forth above, we hold that the trial court exceeded its discretion in certifying its judgment as final pursuant to Rule 54(b) and thus proper for an immediate appeal. Accordingly, these appeals are dismissed.
ON REHEARING EX MERO MOTU: OPINION OF JUNE 17, 2011, WITHDRAWN; OPINION SUBSTITUTED; 1091666 — APPEAL DISMISSED; 1091667 — APPEAL DISMISSED.
WOODALL, PARKER, SHAW, and WISE, JJ., concur.

. There has been much dispute among the parties as to whether both the requests and responses were timely.

. Atlantis has previously filed a cross-claim against JBJ and its individual partners in this action alleging that they had fraudulently failed to disclose the existence of an outstanding right of redemption.

.EB Investments’ sole member is the wife of an attorney who had formerly represented Pace and Atlantis and who was himself named as a defendant in this action in a cross-claim filed by Atlantis alleging that he had failed to inform it of the outstanding right of redemption.