SHAW, Justice.
Pavilion Development, L.L.C. (“Pavilion”), the plaintiff in this action seeking to redeem certain foreclosed real property, challenges the trial court’s judgment assessing the “lawful charges” due the various parties holding a legal interest in the property. See § 6-5-252, Ala.Code 1975 (“Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her....”). Because the trial court exceeded its discretion in certifying its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.— and thus proper for immediate appeal — we dismiss the appeal.

Facts and Procedural History

The web of litigation surrounding the foreclosure of the subject property; the ensuing sales, mortgages, and assignments; and the effect of the subsequent redemption efforts by Pavilion on those transactions is, as previously observed by this Court, immensely complicated. See EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502, 504 (Ala.2005). However, as recently reiterated by this Court in EB *536 Investments, L.L.C. v. Pavilion Development, L.L.C., 77 So.3d 133 (Ala.2011) (“Pavilion II”), the basic underlying facts of the redemption action that is the subject of the present appeal are well established:
“This action was initiated on March 21, 1997, when Pavilion, then operating as John Lary, L.L.C., initiated an action to redeem 19 acres of land [sold] ... at a foreclosure sale on March 22,1996. In the years since, this Court has issued three opinions deciding various issues stemming from Pavilion’s attempted redemption of that property. See Pavilion Dev., L.L.C. v. JBJ P’ship, 979 So.2d 24 (Ala.2007) [ (‘Pavilion I ’) ]; EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502 (Ala.2005); and Ex parte Atlantis Dev. Co., 897 So.2d 1022 (Ala. 2004)....
“In August 1991, James E. Pace, James P. Pace, and William B. Pace (‘the Pace family’), doing business as Pace Properties (‘Pace’), sold approximately 22 acres of unimproved property in Madison County to Gallop Enterprises, Inc. (‘Gallop’), a development company operated by Richard Tracey. The transaction was financed by Pace and in exchange for the land Gallop gave a promissory note secured by a mortgage on the property to Pace in the principal sum of $1,735,000. Gallop then obtained additional financing from Ben H. Walker, Inc. (Walker’), to develop a subdivision on the property, and in return Gallop gave Walker a second mortgage on the property with a principal value of $149,999. Gallop thereafter began developing the planned subdivision; however, after completing the first phase of the project and paying Pace approximately $295,990 obtained from sales of lots in the subdivision, Gallop had exhausted the funds advanced by Walker and could not proceed with the second phase of the subdivision project. Under the threat of foreclosure, Gallop filed a petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code.
“In April 1995, under the supervision of the bankruptcy court, the parties reached a settlement agreement wherein Gallop stipulated that it owed $1,439,010 to Pace and $149,999 to Walker. Pace also agreed to loan Gallop up to an additional $200,000 so that Gallop could complete development of the property and could then pay its debts to Walker and Pace with proceeds obtained from selling developed lots in the subdivision. In conjunction with the settlement agreement, Gallop executed 3 new mortgages on the 19 acres left in the development tract, which mortgages had the following priority: 1) a mortgage in favor of Pace securing a $200,000 loan (‘the development mortgage’); 2) a mortgage in favor of Walker securing the $149,999 note; and 3) a mortgage in favor of Pace securing the $1,439,010 loan. The settlement agreement and the new mortgages were all then recorded in the Madison County Probate Judge’s Office.
“By December 1995, Gallop was again in default on its obligations, and Pace instituted foreclosure proceedings. On March 22,1996, the property was sold to JBJ [Partnership (‘JBJ’) ] — a new partnership made up of the Pace family — at a foreclosure auction for $100,000. The Pace family thereafter paid off the Walker note and continued developing the property on its own, conveying parcels and interests in the property as follows:
“1) On June 6, 1996, JBJ conveyed a permanent drainage easement over a portion of the property to the City of Huntsville.
“2) On June 10, 1996, JBJ conveyed one lot to Asghar D. Pourhassani.
*537 “3) On September 20, 1996, JBJ conveyed two lots to Atlantis Development Company, Inc. (‘Atlantis’). Atlantis thereafter executed multiple mortgages on that property in favor of Jacobs Bank and JBJ.
“4) On January 16, 1997, JBJ conveyed another lot to Atlantis, which lot Atlantis resold to Fritz and Louise Nelson on that same day.
“On March 1, 1997, Gallop, acting through Tracey, sent a letter to JBJ stating that Gallop intended to exercise its statutory right of redemption, see § 6-5-247 et seq., Ala.Code 1975, and to redeem the 19 acres it had lost in foreclosure. Gallop accordingly requested that JBJ provide it with an itemized statement of the lawful charges it would need to pay to complete the redemption and simultaneously requested that JBJ loan Gallop those funds. On March 9, 1997, Gallop sent similar notices requesting statements of lawful charges to Pourhassani and Atlantis. On March 13, 1997, after JBJ had advised Tracey that it did not recognize his authority to exercise Gallop’s right of redemption, Tracey transferred Gallop’s right of redemption to Pavilion, a company operated by his former brother-in-law John Lary and then still known as John Lary, L.L.C., in return for $1,000.
“On March 21, 1997, Pavilion initiated this litigation by filing a redemption action in the Madison Circuit Court.[1] Both before and after filing suit, Pavilion continued to make requests for statements of charges from assorted parties with interests in the property, and some produced the requested statements. Over the following months and years, a host of counterclaims, cross-claims, and separate lawsuits encompassing all manner of contract and tort claims were filed by various parties who had interests in the property or who were otherwise drawn into the dispute. This Court has already considered some of the issues related to those claims[, as noted above].... [I]n August 2007, we decided an appeal in the instant action in which we reversed a summary judgment entered by the trial court in favor of JBJ and against Pavilion, holding that the trial court had erred when it concluded that Tracey lacked the authority to transfer Gallop’s right of redemption to Pavilion and holding that Pavilion did in fact hold the right to redeem the 19 acres at issue. See Pavilion [7], 979 So.2d at 37.... ”
77 So.3d at 134-35 (footnote omitted).
On remand following our decision in Pavilion I, the trial court conducted a four-day bench trial aimed solely at deciding the merits of Pavilion’s redemption claim. Upon the conclusion of the trial and subsequent to the parties’ posttrial submissions, the trial court entered an amended final *538 judgment that included the following summary of its findings:
“ ‘In summary, the court finds that [Pavilion] is entitled to redeem the property described in its original complaint. In order to perfect and complete its redemption, Pavilion must deposit into the office of the Clerk of the Circuit Court of Madison County, Alabama, the sum of $3,770,348.90,1[2] plus all accruing interest and delinquent fees from March 10, 2010, to the date of payment, within 80 days from the date of this judgment. [Pavilion] shall be entitled to a credit against this sum for all monies it placed on deposit with the Clerk of Circuit Court of Madison County following [Pavilion’s] filing of this suit, including accrued interest. Upon payment into court of all sums required, each of the current title holders of the property to be redeemed shall deliver to the Clerk of the Circuit Court a deed conveying all of the transferors’ right, title and interest in each lot or parcel of property to [Pavilion] and shall be paid by the Clerk all sums due in accordance with this judgment. Specifically, upon redemption as set forth in this order, the Clerk is directed to distribute the funds as follows:
“ ‘a. $2,804,472 jointly to [the Pace family];
“ ‘b. $930,001 to [Atlantis];
“ ‘c. $35,875.99, plus all accruing interest and delinquent fees from March 10, 2010, to the date of payment to the Tax Collector of Madison County, Alabama.
“ ‘If [Pavilion] fails to pay all sums required by this order within 30 days from this judgment, [Pavilion] will be held to have forever waived its right to redeem the subject property. Should any posttrial motion or notice of appeal be filed in this case, all times stipulated herein shall be stayed pending resolution of such posttrial motions or appeal subject, however, to the continuation of interest on all sums due at the same rates as set forth herein, plus all accruing interest and delinquent fees from March 10, 2010 to the date of payment. All other claims for relief not specifically addressed herein are denied. Costs are taxed as paid.’ ”
77 So.3d at 135-36. Subsequent to the entry of the above-quoted order, the trial court denied all remaining postjudgment motions and certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.; both EB Investments, L.L.C., and Pavilion appealed. See Pavilion II, 77 So.3d at 136.
On appeal, we found conclusive the argument made by both Pavilion and EB Investments that, despite its purported certification pursuant to Rule 54(b), the trial court’s judgment was not final in that it failed to address all pending claims. Specifically, we explained:
“On January 23, 1999, the trial court entered an order severing Pavilion’s redemption claim from the other cross-claims, counterclaims, and third-party claims that had been filed in the action. JBJ and the Pace family argue that the trial court acted within the wide discretion granted it by Rule 42(b), Ala. R. Civ. P., in doing so and that the trial court’s order should accordingly be viewed as a final judgment subject to immediate appeal, explaining:
“ ‘By entering this order, the trial court intended to address the claims and issues raised by the Pavilion com *539 plaint seeking to exercise the right of redemption first before turning to the other claims filed later. Logically, this was a wise decision in that the other claims were dependent upon whether or not Pavilion indeed had the right to redeem and, if it did, whether or not Pavilion would actually choose to exercise that right by making all payments found by the trial court to be due.’
“(JBJ and the Pace family’s brief in case no. 1091667, pp. 39-40.) See also Ex parte Humana Med. Corp., 597 So.2d 670, 671 (Ala.1992) (‘The trial court has wide discretion in ordering separate trials and in severing claims, and the trial court’s decision in that regard will be reversed only if it abused that discretion. Ex parte R.B. Ethridge & Associates, Inc., 494 So.2d 54 (Ala.1986). “[A]bsent an abuse of discretion, the trial court will be allowed to ‘shape the order of trial’ through the provisions of Rule 42, [Ala. R. Civ. P.].” Ex parte Marcrum, 372 So.2d 313, 315 (Ala.1979). See, also, Black v. Boyd, 251 F.2d 843 (6th Cir.1958). Likewise, when claims have been severed pursuant to Rule 21, [Ala.] R. Civ. P., the trial judge has even more discretion to “shape the order of trial.” ’). We agree with JBJ and the Pace family that the trial court had the discretion to order an initial trial on Pavilion’s redemption claim. Accordingly, the trial court did not exceed its discretion by declining to resolve all the pending claims, including the dispute between EB Investments and Atlantis, ‘until such time as Pavilion has either perfected or waived its right to redeem [the property].’
“However, a judgment on Pavilion’s redemption claim should fully resolve that claim and resolve all outstanding issues concerning lawful charges and revived liens so that Pavilion can make an informed decision as to whether it wishes to complete redemption of the property or forever waive that right. The trial court’s judgment fails to do so in at least three respects. First, the trial court’s judgment fails to address the City of Huntsville’s interest in the property. Huntsville obtained from JBJ a permanent drainage easement over a portion of the property on June 6, 1996, and is accordingly entitled to compensation for that interest if Pavilion redeems the property. Pavilion may not elect to forgo redemption of Huntsville’s interest while redeeming the rest of the property because ‘[t]he law does not allow piecemeal redemption, absent an agreement providing for it,’ Costa & Head (Birmingham One), Ltd. v. National Bank of Commerce of Birmingham, 569 So.2d 360, 363 (Ala.1990), and there is no evidence indicating that the mortgage foreclosed upon contained a • provision allowing for piecemeal redemption. It is unclear if Huntsville constructed any improvements to the property in accordance with its interest for which it would be due compensation, and, if it did not, the trial court may well find, as it did with the property held by [Asghar D.] Pourhassani (who also submitted no evidence of improvements to the lot he owned), that the sum set out as being due JBJ necessarily included the amount required to redeem Huntsville’s interest also. In that case, the specific amount due Huntsville from the sum awarded JBJ could be determined after Pavilion elects to complete redemption of the property, if it in fact does so. However, in light of the possibility that Huntsville could be entitled to some compensation directly from Pavilion for lawful charges, its interest should be addressed by the trial court *540 before we consider an appeal of a judgment deciding the redemption claim.
“Similarly, the trial court’s order fails to award any compensation to [Fritz and Louise] Nelson[], who, on January 16, 1997, purchased a lot from Atlantis that Atlantis had earlier purchased from JBJ. The trial court declined to award any compensation to the Nelsons because of a settlement agreement entered into by the Nelsons and Pavilion whereby Pavilion agreed not to redeem the Nelsons’ lot and the Nelsons agreed not to pursue any claims against Pavilion. However, as noted supra, ‘[t]he law does not allow piecemeal redemption.’ Costa & Head, 569 So.2d at 363. As this Court further explained in Shealy v. Golden, 897 So.2d 268, 272-73 (Ala.2004):
“ ‘Once one or more tracts of land are sold at a foreclosure sale, the manner in which those tracts are divided up determines the units in which those tracts “may and must” be redeemed. Redemption must be made in such units; therefore, piecemeal redemption of a portion of that unit is prohibited.’
“(Footnote omitted.) At the foreclosure sale on March 22, 1996, the property Pavilion now seeks to redeem was sold to JBJ as a single 19-acre unit for $100,000. Thus, notwithstanding the fact that JBJ later began parceling off the property, Pavilion is required to redeem the entire 19-acre tract if it wishes to redeem the property at all. The trial court indicated in its judgment that the Nelsons properly and timely provided Pavilion with a statement of charges. Following the dismissal of these appeals, the trial court should accordingly calculate the lawful charges Pavilion would owe the Nelsons in order to complete redemption of their lot.
“Finally, the trial court’s order stated that the development mortgage Gallop executed in favor of Pace as part of the April 1995 settlement agreement would be revived upon redemption and thereafter remain a superior lien upon the property. See § 6-5-248(d), Ala.Code 1975 (stating that, when ‘any [party] redeem[s], all recorded judgments, recorded mortgages, and recorded liens in existence at the time of the sale, are revived against the real estate redeemed and against the redeeming party....’). However, the trial court did not determine the balance of the loan secured by the development mortgage. The April 1995 settlement agreement originally capped the balance at $200,000; however, JBJ and the Pace family argue that the agreement was later modified, and they claim that the balance due is now $282,778. Pavilion asserts that the balance is only $154,386. Pavilion argues that the trial court’s failure to decide the balance due on the loan secured by the development mortgage would likely result in a subsequent foreclosure action involving issues intertwined with the issues in this case and that the trial court’s Rule 54(b) certification was accordingly improper. We agree that the trial court should rule on this issue before we consider an appeal of the other elements of the trial court’s judgment. Doing so will not only lessen the risk of future litigation involving these issues, but also allow Pavilion to make its decision whether to redeem the property with full knowledge of the liabilities it would be assuming by doing so.”
Pavilion II, 77 So.3d at 136-38 (emphasis added). In light of the foregoing findings, we dismissed the appeal. Id. at 139.
Thereafter, upon consideration of the parties’ additional written submissions, including, among other filings, stipulations between Pavilion and the City of Hunts *541 ville and between Pavilion and Fritz and Louise Nelson, and a motion for the trial court to determine the balance of the loan secured by the Pace development mortgage — as well as several objections thereto — the trial court amended the judgment made the subject of the appeal in Pavilion II as follows:
“1. The Supreme Court has directed the Court to ascertain what amount would be due to the City of Huntsville to redeem its interest in the subject property. ... Pavilion and the City of Huntsville stipulate that nothing would be owing to the City of Huntsville upon any redemption of the property, as the City paid nothing for its easement deed, has made no improvements, has paid no fees, and is not otherwise entitled to any lawful charges.
“2. This Court was further directed to calculate the lawful charges that Pavilion would owe to Fritz and Louise Nelson in order to complete redemption of their lot. Pavilion and the Nelsons stipulate that the Nelsons would be owed the sale price of $47,500.00, plus $5,700.00 statutory interest, totaling $53,200.00, to redeem their interest. The Court does not address any further agreements between these parties.
“3. The Supreme Court’s final directive was to determine the balance of the loan secured by the ‘Pace Development Mortgage.’ Pavilion and the Pace defendants are in dispute on this amount. The Court agrees with the Pace defendants that under ... Section 8.01 of the bankruptcy settlement agreement previously introduced into evidence Pace had the right to apply post-default expenditures on the project to the balance available under the development note, up to a cap of $200,000.00. The undisputed evidence is that such expenses incurred by Pace exceed $200,000.00. Accordingly, and under the terms of the instruments between the parties, the lien created by the Pace development note and mortgage, which would be revived upon any redemption and thereafter remain as a superior lien on the subject property, totals $200,000.00.”
Pavilion subsequently filed a post-judgment motion seeking to alter, amend, or vacate the trial court’s judgment, asserting numerous claims of error (and also incorporating arguments asserted by it in prior postjudgment motions). Following the trial court’s summary denial of that motion, Pavilion has again appealed.

Discussion

Pavilion raises numerous issues on appeal. Before reaching those arguments, however, we must first consider whether, as both Pavilion and EB Investments again contend, the trial court erred in certifying its judgment as final pursuant to Rule 54(b) when that order purportedly failed to address all the individual lots— and the resulting interests attached thereto — contained within the parcel of property Pavilion seeks to redeem. Specifically, Pavilion argues that the trial court’s order leaves title to lot 2 and lot 12 (both of which were, post-foreclosure, purchased and mortgaged by Atlantis Development Company, Inc.) “in legal limbo” and, thus, failed to “convey a clear redemption title.” (Pavilion’s brief, at p. 27.) In its motion seeking to dismiss the appeal, EB Investments similarly maintains, among other arguments, that the trial court “[flailed to address the amount due to be paid to EB Investments ... for obtaining a release of its mortgages.”
As set out above, this Court, in Pavilion I, specifically noted that among the remaining issues to be considered by the trial court in order to effect a final adjudication with regard to Pavilion’s redemption claim was the issue concerning “the *542 amounts of lawful charges owed by Pavilion to the defendants.” 979 So.2d at 87 n. 22. In Pavilion II, we further explained that “a judgment on Pavilion’s redemption claim should fully resolve that claim and resolve all outstanding issues concerning lawful charges and revived liens so that Pavilion can make an informed decision as to whether it wishes to complete redemption of the property.” 77 So.3d at 137. We thereafter proceeded to identify “at least ” three deficiencies with regard to the trial court’s first attempt at a final adjudication of that claim. Id. (emphasis added). That qualified identification was clearly not intended to be exhaustive. Although the trial court, in attempting to rectify the nonfinal status of its original order, dutifully addressed the three deficiencies specifically identified by this Court in Pavilion II, it did not address the interests of all defendants to the redemption action with regard to all parcels affected thereby.
Instead, as both Pavilion and EB Investments agree, the trial court’s amended judgment fails, among other things, to address all the interests attached to lots 2 and 12, which Atlantis purchased post-foreclosure. Missing from the trial court’s amended judgment is a determination of the lawful charges, if any, due EB Investments and/or JBJ with regard to their respective mortgages on those properties. Both EB Investments, as successor in interest to Jacobs Bank, and JBJ hold post-foreclosure mortgages on two lots encompassed in the subject property and are defendants in this case. See § 6-5-253(a)(5), Ala.Code 1975 (providing that the “lawful charges” the redeeming party must pay include mortgages on the properties subject to redemption to the extent of the purchase price). Although the trial court’s original judgment included an award to Atlantis, there is no judgment with respect to the claims of EB Investments and JBJ, who are also defendants in this action. This failure, as Pavilion notes, would require Pavilion to make a redemption decision without full knowledge of the liabilities it would be assuming by doing so, i.e., it must elect to redeem without knowing whether some additional party with an interest in the property might be held entitled to subsequent compensation from Pavilion for lawful charges accruing to that party. 77 So.3d at 138.
As we noted in Pavilion II, redemption may not be accomplished in a piecemeal fashion. Id. (citing Costa & Head (Birmingham One), Ltd. v. National Bank of Commerce of Birmingham, 569 So.2d 360, 363 (Ala.1990)). Thus, as we explained in Pavilion II, all the outstanding potential “interest[s] should be addressed by the trial court before we consider an appeal of a judgment deciding the redemption claim.” 77 So.3d at 137.
Although this Court is clearly aware of the long and tortured history of the underlying litigation, we are similarly aware of the general disfavor with which both piecemeal appellate review and Rule 54(b) certifications are viewed. See Pavilion II, 77 So.3d at 138-39 (citations omitted). In light of the fact that the trial court’s order failed to address the claims of all the assorted parties claiming an interest in the subject property, we can reach no other conclusion but that the trial court exceeded its discretion in certifying its judgment as final for purposes of an immediate appeal. Accordingly, the appeal is dismissed.
APPEAL DISMISSED.
MOORE, C.J., and STUART, PARKER, and WISE, JJ., concur.

. Specifically, in addition to numerous fictitiously named defendants, Pavilion’s original redemption complaint named JBJ Partnership, James Edgar Pace, James Patrick Pace, William Byron Pace, Asghar D. Pourhassani, Atlantis Development Company, Inc., and Fritz and Louise Nelson as defendants and included the following counts: redemption and declaratory judgment (count I) and "Quiet Title” (count II). Pavilion later amended its complaint to include a count challenging the "lawful charges” claimed by Atlantis and the Nelsons. Subsequent amendments added the City of Huntsville, the holder of a drainage easement over a portion of the subject property, and Jacobs Bank, Atlantis's mortgagee, as defendants. EB Investments, L.L.C., is the successor in interest to Jacobs Bank. Further, by means of separate requests made pursuant to Rule 24, Ala. R. Civ. P., both E. Ray McKee, Jr., the closing attorney on the Atlantis transaction, and the Madison County tax collector, a lienholder with regard to property taxes for the 2005 tax year, sought to intervene in the redemption litigation.

. The amounts provided later in the trial court's order actually total $3,770,348.99.