BRYAN, Justice.
Facts and Procedural History
Charles K, Breland is a developer of real property who, through his ownership of multiple companies, has owned and developed real property in Alabama and Florida. In 2002, Breland hired David E. Hud-gens to provide legal services for him and his companies. According to Hudgens, Bre-land informed him early during their professional relationship that he “was suffering significant cash flow problems.” As a result, Hudgens says, the various law firms with which Hudgens worked while providing Breland and his companies with legal services delayed billing “a significant portion of the attorneys’ fees and costs” for those services. Breland disputes that contention and claims that he and/or his companies paid Hudgens,more than $2.7 million for Hudgens’s legal services between 2004 and 2010. According to Hud-gens, Hudgens & Associates, LLC (“H & A”), is “the holder of the rights to the attorney’s fees” allegedly incurred by Bre-land and his companies over the course of Hudgens’s representation of Breland.
Hudgens also contends that in 2004 Bre-land informed him that Shores of Panama, Inc. (“Panama”), one of Breland’s companies, had insufficient funds to begin a condominium project in Florida. As a result, Hudgens caused Equity Trust Company (“ETC”), as custodian for the benefit of Hudgens’s individual retirement account #41457 (“IRA #41457”) and individual retirement account # 41458 (“IRA #41458”), to loan Panama $390,000 and $80,000 from those IRAs, respectively, so that Panama could begin the project. Bre-land guaranteed payment of those loans in separate promissory notes.
On March - 11, 2009, Breland filed a Chapter 11 bankruptcy petition (“the Bre-land bankruptcy”) in the United States Bankruptcy Court for the Southern District of Alabama (“the bankruptcy court”). Breland subsequently filed the required schedules,[1] required disclosure statement,[2] and a proposed plan ’ of reorganization[3] that identified H & A as an unsecured creditor' holding a $1 million claim . and identified ETC as an unsecured creditor *1093 holding a $390,000 claim. On May 3, 2010, Hudgens filed a proof of claim in the Bre-land bankruptcy on b.ehalf of H. & A for “legal fees” in the amount of $2,334,987.08 and filed proofs of claim on behalf of ETC for “guaranty of note” in the amounts of $879,929.55 (as to IRA #41457) and ,$180,498.37 (as to IRA # 41458). According to Hudgens, Breland telephoned him on May 4, 2010, and “berated [him] and complained vociferously about the H & A proof of claim, including claiming that it was fraudulent.” Later that day, Breland informed Hudgens in writing that he was “shocked” that Hudgens had filed claims in the Breland bankruptcy alleging that Bre-land had “outstanding legal bills .,. amounting to several million dollars” and asked Hudgens to provide him with-itemized billing of those fees. On October 1, 2010, Breland amended his disclosure statement and proposed plan of reorganization to reflect that the H & A and ETC claims were disputed but that settlement negotiations were then ongoing.
, On December 6, 2010, Breland and Oha-na Cabo, LLC (“Ohana Cabo”), a creditor in the Breland bankruptcy, filed with the bankruptcy court a proposed plan of .reorganization (“the Plan”), The Plan provided that “each holder of an allowed unsecured claim” would be paid in full and identified ETC as custodian of IRA # 41457 and of IRA #41458 as a “holder[] with agreed allowed amounts” of $879,929 and $180,498, respectively. The Plan also provided that “holders of unsecured claims” that were not identified as “holders with agreed allowed amounts,” a group,'that included H & A, held claims that were disputed and that Breland was preserving his objection to those claims. However, it appears that, later that day, Breland and Hudgens reached a settlement of the-H <& A and ETC claims, the terms, of which are set forth in a December 6, .2010, e-mail from Robert Galloway, Breland’s attorney, to Hudgens:
“David, this letter will confirm our settlement of your claims. We will allow your, claims for your retirement plans in the full amount of $1,080,000. With regard to your fees, we have agreed to a claim of $1,500,000 to be evidenced by a note and mortgage on the Grand Bay property due [in] one year with 6% interest,” ., , . .
(Emphasis added.) It is undisputed that the Grand Bay property, located entirely in Mobile County, consists of 6- distinct parcels of property comprising approximately 508 acres that, at that time, were owned by Breland.
On' December 8, 2010, the bankruptcy court held a hearing regarding confirmation of the Plan. At that hearing, the following colloquy occurred between Galloway and the bankruptcy court.
“MR. GALLOWAY: Judge, I’m proud to announce that we have settled everything,
[[Image here]]
“MR. GALLOWAY: I might an■nounce some of the things that were said today with Mr. Hudgens.
“THE COURT: All right.
“MR. GALLOWAY: We have reached a settlement of his attorney’s fee claim.
[[Image here]]
“MR. GALLOWAY: We are going to give him a mortgage on the Grand Bay property. We’ll put this in the order.
[[Image here]]
“MR. ■'GALLOWAY: Of $1,500,000 which is the additional aínount he has agreed to accept.
“THE COURT: All right.
“MR. GALLOWAY: Now when we— he has his retirement plan claims too.
“THE COURT: Yes, right.
. “MR. GALLOWAY: And we’re going to work with him as to how we apportion *1094 the cash, but he will have a mortgage left for $1,500,000—he’s going to get $1,080,000 cash. There’s going to be a mortgage for a million-five; but some of that might be retirement plan and some of it attorney’s fee, depending on how he wants that paid this year versus next year.”
In light of those agreements, on December 10, 2010, Breland and Ohana Cabo filed a proposed amended version of the Plan that added a new provision (hereinafter referred to as “Section 3.2.3”), which provided:
“3.2.3 Hudgens & Associates LLC and Equity Trust Company fbo David E. Hudgens IRA Claims. [The ETC claim on behalf of IRA # 41457] shall be paid $0.00. [The H .& A claim and the ETC claim on behalf of IRA # 41458] shall be Allowed in ■ the cumulative amount of $2,580,000, of which $1,080,000 shall be paid on the Distribution Date .... The $1,500,000 balance, together with" interest from the Confirmation Date at the rate of 6% per annum, shall be paid on or before December 31, 2011[,] in accordance with the terms ... of a promissory note and mortgage to be agreed upon by the parties. The Debtor shall execute and deliver said promissory note and mortgage to his attorney Robert M. Galloway immediately upon confirmation of the Plan. On the Distribution Date, Mr. Galloway shall record said mortgage in the real property records maintained in the Office of the Judge of Probate of Mobile County, Alabama, and shall deliver said promissory note to David E. Hudgens as agent for [H & A] and [ETC] as Custodian for the benefit of David E. Hudgens IRA [#]41458.”
(Emphasis added.)
On December 10, 2010, the bankruptcy court entered an order confirming the Plan, as amended, and Breland subsequently made the initial $1.08 million payment as required by Section 3.2.3. However, on December 23, 2011, approximately one week before Breland was required to make the $1.5 million payment required by Section 3.2.3, John H. Adams, an attorney then representing Breland, sent Hudgens a letter indicating that Breland had potential claims against Hudgens “stemming from events' that transpired while [Hud-gens was acting as Breland’s] counsól” and that the value of those claims would equal or exceed the $1.5 million due under Section 3.2.3. Included with that letter was a copy of. a complaint asserting claims against Hudgens alleging breach of a fiduciary duty and .fraudulent suppression that, Adams said, Breland was prepared to file if he and Hudgens could not reach a resolution of Breland’s claims.
Breland never made the $1.5 million payment required by Section 3.2.3, and, although Hudgens made, he says, “numerous requests” for Galloway to deliver the promissory note and to record the mortgage as required by Section 3.2.3, Galloway neither delivered a promissory note to Hudgens nor recorded a mortgage securing the H & A and ETC claims. As a result, and given his concern that Breland was “selling off a lot of property,” Hud-gens recorded the Plan, as amended, in the Mobile Probate Court on March 5, 2012.
On November 20, 2012, Breland conveyed the Grand Bay property by quitclaim deed to Gulf Beach Investment Company of Perdido, LLC (“Gulf Beach”), a company owned by Breland. Hudgens says that he discovered that conveyance in April 2013, and, upon that discovery, Hud-gens executed and filed in the Mobile Probate Court an affidavit (“the Hudgens affidavit”) in which he stated that the Grand Bay property was the property Breland had agreed under Section 3.2.3 of the Plan, as amended, to mortgage but that, instead of performing his obligations, Breland had *1095 transferred the Grand Bay property to Gulf Beach.
On March 6, 2014, H & A and ETC (hereinafter collectively referred to as “the" plaintiffs”) filed in the Mobile Circuit Court (“the trial court”) a complaint against Breland and Gulf Beach in which they brought the following claims: (1) a claim seeking enforcement of the Plan,' as amended, through a judgment ordering Breland to deliver the promissory note to Hudgens and to record a mortgage on the Grand Bay property for the plaintiffs’ benefit; (2) a claim seeking enforcement of the Plan, as amended, through a judgment awarding the plaintiffs $1.5 million, plus interest; (3) a fraudulent-transfer claim seeking a judgment voiding the conveyance of the Grand Bay property to Gulf Beach; enjoining Breland from further conveyances of the Grand Bay property; awarding damages for the allegedly fraudulent transfer of the Grand Bay property; and imposing a constructive trust on the Grand Bay property for the plaintiffs’ benefit; and (4) a claim seeking a judicial foreclosure of the Grand Bay property for the plaintiffs’ benefit. On April 21, 2014, Hudgens filed in the Mobile Probate Court a notice of lis pendens as to the Grand Bay property as required by § 35-4-131(a), Ala. Code 1975.[4]
On April 28, 2014, Adams sent Hudgens a letter that stated, in pertinent part:
“As you will note, the [Plan] expressly stated that ... Breland would provide you with a mortgage the terms of which were to be agreed upon by the parties. In [the Hudgens] affidavit you expressly state that the property in the Gulf Beach deed was the property to be mortgaged. The [P]lan does not describe any property to be mortgaged and there was ho agreement whereby ... Breland agreed to pledge any specific property to secure this obligatioh. As such, by filing [the Hudgens] affidavit you have unilaterally encumbered ... all of the property owned by Gulf Beach ... and likely slandered title to the property.
[[Image here]]
“While this litigation is pending, you cannot continue to' encumber [500] plus acres of property which was never intended to be encumbered and which has a" value well in excess of your alleged claim of $1,500,000.”
On May 21, 2014, Breland and Gulf Beach filed an answer and a counterclaim against the plaintiffs and a third-party complaint against Hudgens in which they claimed that Breland had refused to make the $1.5 million payment required by Section 3.2.3 because, they said, the plaintiffs and Hudgens “knew that the ... proofs of claim [filed in the Breland bankruptcy] were false” and .because, they said, - Bre-land “had become aware of certain fraudulent activities conducted by Hudgens, H & A, and [ETC] and raised these events as set offs to any amounts remaining to be paid.” Given those allegations and the filings of the Hudgens affidavit and the no *1096 tice of lis pendens, Breland and Gulf Beach brought the following claims against the plaintiffs and Hudgens: (1) a fraud claim and a breach-of-contract claim seeking a judgment “cancelling all obligations of Breland that are set forth in the Plan” and awarding Breland $1.08 million in damages—the amount Breland had previously paid in accordance with Section 3.2.3; (2) a slander-of-title claim; and (3) a quiet-title claim seeking a judgment quieting title to the Grand Bay property in favor of Gulf Beach.
On September 8, 2014, the plaintiffs and Hudgens filed a motion for a partial summary judgment as to the plaintiffs’ “enforcement” claims and as to Breland and Gulf Beach’s fraud, breach-of-contract, and slander-of-title claims. That same day, Breland and Gulf Beach filed a “motion to cancel and modify notice of lis pendens and motion' for partial summary judgment” in which they argued that, although Breland had agreed to give Hudgens a mortgage to secure the plaintiffs’ claims in the Breland bankruptcy, he had never specified which property he would mortgage. As a result, Breland and Gulf Beach sought a judgment “quashing, cancelling and removing” the'Hudgens affidavit; modifying the notice of lis pendens so that it encumbered' only parcel 4 of the Grand Bay property, which, Breland and' Gulf Beach contended, provided sufficient security for the plaintiffs’ claims; and authorizing Gulf Beach to transfer the Grand Bay property, excluding parcel 4, to Grand Oaks Plantation,. LLC (“Grand Oaks”), a company owned by Breland. Before the trial court issued any order, Gulf Beach on October 24, 2014, deeded parcels 1, 2, 3, and 6 of the Grand Bay property to Grand Oaks. The plaintiffs subsequently amended their complaint to add Grand Oaks as a defendant. (Breland, Gulf Beach, and Grand Oaks are hereinafter collectively referred,to as “the defendants.”)
On December 17, 2014, before the plaintiffs filed their amended complaint, Bre-land and Gulf Beach filed a “motion for a determination of collateral under contract” in which they reiterated that Breland was challenging the $1.5 million obligation imposed on him by Section 3.2,3 of the Plan, as amended, but indicated that Breland was “willing to post sufficient security during the pendency of the litigation as contemplated under the Plan.” Breland and Gulf Beach requested a hearing so they could present evidence of the value of the Grand Bay property, which, they said, would allow the trial court to modify the notice of lis pendens so that it encumbered only as much of the Grand Bay property as necessary to secure the plaintiffs’ $1.5 million claim.
The trial court held an evidentiary hearing regarding the value of the Grand Bay property and, on September 17, 2015, entered an order (“the Septembér 2015 order”) in which it found that Hudgens was not entitled’ to encumber the entirety of the Grand Bay property because the Plan, as amended, did not specify the property Breland was required to mortgage. The trial court also found that the Plan, as amended, reserved Breland’s right to challenge the validity of the $1.5 million obligation imposed on him by Section 3.2.3 but that the defendants “agree that ,,. [the] Plan ... contemplated that Breland would provide some collateral until a determination was reached as to the validity of the [plaintiffs’ -claim.” Thus, the trial court, after hearing conflicting evidence of the value of the Grand Bay property, found that parcel 4 of the Grand Bay property “would alone provide sufficient collateral to secure the [plaintiffs’ claim.” However, “in an abundance of caution,” the trial court ordered that the notice of lis pendens “is hereby modified such that it encumbers only Parcel 1, Parcel 4, Parcel 5, and [part] of Parcel 6.” The trial court authorized the *1097 defendants to “convey, transfer, sale, encumber, and pledge” that part of the Grand Bay property unencumbered by the September 2015 order and directed the plaintiffs not to further encumber the Grand Bay property. On October 23, 2015, the defendants filed a motion requesting that the trial court certify the. September 2015 order as final pursuant to Rule 54(b), Ala. R. Civ. P. The trial court granted that motion, and on December 18, 2015, the plaintiffs and Hudgens appealed. That case was assigned case no. 1150302,[5]
On March 24, 2016, the trial court entered a judgment (“the March 2016 judgment”) on the parties’ motions for a partial summary judgment. In that judgment, the trial court noted that it was not addressing the plaintiffs’ “mortgage claim” because it had denied that claim in the September 2015 order. After- setting forth extensive findings of fact and conclusions of law, the trial court awarded the ■ plaintiffs $2,189,342.96 (consisting of $1.5 million in principal, plus interest); “denied and dismissed” the defendants’ fraud, breach-of-contract, and slander-of-title claims; and certified the judgment as final pursuant to Rule 54(b).[6] The trial court denied the defendants’ postjudgment motion, and the defendants appealed. That case was assigned case no. 1150876, and this Court consolidated case nos. 1150302 and 1150876 for the purpose of writing one opinion. We now dismiss both appeals.
Discussion
Before addressing the arguments raised by the parties’ appeals, we must determine whether we have jurisdiction to do so because the plaintiffs’ fraudulent-transfer and judicial-foreclosure claims and the defendants’ quiet-title claim remain pending.[7] “An appeal will ordinarily lie only from a final judgment;' that is, a judgment that conclusively determines the issues before the court and ascertains and declares the rights of the' parties.” Palughi v. Dow, 659 So.2d 112, 113 (Ala. 1995). However,
“‘[w]ith respect to the finality of judgments adjudicating fewer than all claims in a case, . Rule 54(b), Ala. R. Civ. P., provides:
“ ‘ “When more than one claim for' relief is presented in an action, ,.. or when multiple parties are involved} the court may- direct the entry , of a final judgment as- to one or.more but fewer than all of the claims or parties only upon an express determination that there is no just reason for, delay and. upon an express direction for the entry of judgment .... [I]n the absence of such determination and direction, *1098 any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and. liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.”
“ ‘ “If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will generally lie from that judgment.” Baugus v. City of Florence, 968 So.2d 529, 531 (Ala. 2007) (emphasis added). However, this Court will not consider an appeal from a judgment certified as final under Rule 54(b) if it determines that the trial court exceeded its discretion in concluding that there is “ho just reason for delay.” Rule 54(b); see also Scrushy v. Tucker, 955 So.2d 988, 996 (Ala. 2006) (“Whether there was ‘no just reason for delay’ is an inquiry committed'to the sound discretion of the trial court, and, as to that issue, we must determine whether the trial court exceeded its discretion.”).
“ ‘A trial court exceeds its discretion in determining that there is “no just reason for delay” when “the issues in thé'claim being certified and a claim that will remain pending in the trial court “ ‘are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.”’” Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala. 2006) (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala. 2002), quoting in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala. 1987)). See also Centennial Assocs., Ltd. v. Guthrie, 20 So.3d 1277, 1281 (Ala. 2009) (“ ‘It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the [trial] court renders its decision on the remaining claims or as to the remaining parties.’” (quoting 10 Charles Alan Wright et al., Federal Practice and Procedure § 2659 (1998))).’
“Loachapoka Water Auth., Inc. v. Water Works Bd. of Auburn, 74 So.3d 419, 422-23 (Ala. 2011).”
Grant v. Breland Homes, LLC, 156 So.3d 391, 395-96 (Ala. 2014) (second and third emphasis added).
“This Court looks with some disfavor upon certifications under Rule 54(b).
“ ‘It bears repeating, here, that “ ‘[cjertifications under Rule 54(b) should be entered only in exceptional cases and should not be entered rou-finely.’ ” State v. Lawhorn, 830 So.2d 720, 725 (Ala. 2002) (quoting Baker v. Bennett, 644 So.2d 901, 903 (Ala. 1994), citing in turn Branch v. South-Trust Bank of Dothan, N.A., 514 So.2d 1373 (Ala. 1987)). “ ‘ “Appellate review in a piecemeal fashion is not favored.” ’ ” Goldome Credit Corp. [v. Player, 869 So.2d 1146, 1148 (Ala. Civ. App. 2003)] (quoting Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190, 192 (Ala. Civ. App. 1999), quoting in turn Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala. Civ. App. 1996)) (emphasis added).’
“Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala. 2004).”
Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala. 2006).
In this case, the plaintiffs’ mortgage, fraudulent-transfer, and judicial-foreclosure claims were all based on the plaintiffs’ contention that Breland was obli *1099 gated to give Hudgens a mortgage on the Grand Bay property but refused to do so. Conversely, the defendants’ slander-of-title and quiet-title claims were based on their contentions that the Plan, as amended, does not specify which property was to be mortgaged and that Breland had never agreed to mortgage the Grand Bay property specifically. Thus, it is clear that the central issue with respect to resolution of certain of the adjudicated claims and the pending claims is the parties’ rights and interests in the Grand Bay property.
In Schlarb v. Lee, supra, Lisa Schlarb, claiming that she had an ownership interest in Job Source, L.L.C. (“Job Source”), a limited liability company owned by Davis Lee and Danny Yancey, sued Lee and Yancey alleging fraud, breach of contract, and unlawful conversion of her claimed ownership interest in Job Source after they terminated her employment from Job Source. The circuit court entered a summary judgment against - Schlarb on the fraud and conversion claims and certified that judgment as final pursuant to Rule 54(b), and Schlarb appealed.
In dismissing Schlarb’s appeal, this Court noted that “[t]he essence of both Schlarb’s fraud claim and her breach-of-contract claim is that Lee and Yancey agreed to, but did not, give her an ownership interest in Job Source” and concluded that, “in the interest of justice, Schlarb’s fraud and conversion claims should not be adjudicated separately from the breach-of-contract claim.” 955 So.2d at 420. Just like the essence of Schlarb’s fraud and breach-of-contract claims was her contention that she had an ownership interest in Job Source, the essence of the plaintiffs’ mortgage, fraudulent-transfer, and judicial-foreclosure claims and the defendants’ slander-of-title and quiet-title claims against the plaintiffs and Hudgens is' the parties’ competing'claims to rights in the Grand Bay property. Thus, in the interest of justice, those claims should be completely adjudicated together. See also Pavilion Dev., L.L.C. v. JBJ P’ship, 142 So.3d 535, 542 (Ala. 2013) (concluding, in a redemption case, that a trial court exceeded its discretion in entering a Rule 54(b) certification “[i]n light of the fact that the. trial court’s order- failed to address the claims of all the assorted parties claiming an interest in the subject property”).
Furthermore, as noted above, this Court has held that a trial court exceeded its discretion in entering a Rule 54(b) certification where “[rjepeated appellate review of the same underlying facts would be a probability” because “ ‘ “[i]t is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the [trial] court renders .its decision on the remaining, claims or as to the remaining parties.” ’ ” Smith v. Slack Alost Dev. Servs. of Alabama, LLC, 32 So.3d 556, 562 (Ala. 2009) (quoting Centennial Assocs., Ltd. v. Guthrie, 20 So.3d 1277, 1281 (Ala. 2009), quoting in turn 10 Charles Alan Wright et al., Federal Practice and Procedure § 2659 (1998)). See also Fuller v. Birmingham-Jefferson Cty. Transit Auth., 147 So.3d 907, 913 (Ala. 2013) (noting that a Rule 54(b) certification was not appropriate “where ‘[t]he factual underpinnings of the adjudicated and no-nadjudicated counts are ‘ ... inextricably intertwined’ ” (quoting Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 45 (1st Cir. 1988))); and Bella Inv., Inc. v. Multi Family Serv., Inc., 80 So.3d 921, 924 (Ala. Civ. App. 2011) (noting that a Rule 54(b) certification would not have been appropriate because the adjudicated claims “ar[o]se out *1100 of; the same set of common facts” as the remaining pending claims).
Here, there is more than a probability that accepting the trial court’s Rule 54(b) certifications would require this Court to review the same facts again shotild it be presented with a future appeal (or appeals) after the pending claims are adjudicated; this Court would without question have to do so because the “factual underpinnings” of the adjudicated claims—those facts givr ing rise to the Breland bankruptcy; the plaintiffs’ dairns in the Breland-bankrupt-cy, and the parties’ agreements settling those' claim's—are “inextricably intertwined” With the pending claims. Fuller, supra. Thus, given the interrelated nature of the adjudicated claims and the pending claims,- separate adjudications would lead to piecemeal appellate review of the same facts and issues 'if this Court were to review the parties’ arguments in these appeals and then later be presented with an appeal from a judgment adjudicating the pending claims. See Pavilion, 142 So.3d at 542 (noting “the general disfavor with which both piecemeal appellate review arid Rule 54(b) certifications are viewed”); and Stephens v. Fines Recycling, Inc., 84 So.3d 867, 879 (Ala. 2011) (dismissing an appeal because the “possibility of a future appeal and this Court’s general disfavor of Rule 54(b) certifications, coupled with the interrelated nature of the .still pending [claims],” would result “in appellate review in piecemeal fashion”).
The particular circumstances of this case dictate that the pending claims should be adjudicated or otherwise disposed of with those claims that have already been adjudicated. Accordingly, we hold that the trial court exceeded its discretion in certifying as final the orders from which-these appeals lie. In the absence of final judgments, the appeals must be dismissed. Stephens, supra.
.1150302—DISMISSED.
• 1150876—DISMISSED.
Bolin, Murdock, Shaw, and Main, JJ., concur.

. See 11 U.S.C. § 521.

.See 11 U.S.C. § 1125.

.See 11 U.S.C. § 1121.

. Section 35-4-131(a) provides, in pertinent part:
“When any civil action or proceeding shall be brought in any court to enforce any lien upon, right to or interest in, or to recover any land, or where an application has been made to the probate judge of any county for an order of condemnation of land, or any interest therein, the person, corporation, or governmental body commencing such action or proceeding or making such application shall file with the judge of probate of each county where the land or any part thereof is situated a notice containing the names of all of the parties to the action or proceeding, or the persons named as those having an interest in the land in the application for an order of condemnation, a description of the real estate and a brief statement of the nature of the lien, writ, application, or action sought to be enforced:

. On March 1, 2016, the plaintiffs, the defendants, and Hudgens filed a “joint motion for ■consent order authorizing sale of real property free and clear of liens and encumbrances” in which they indicated that the plaintiffs and Hudgens agreed to the sale of that part of the Grand Bay property unencumbered by the September 2015 order, provided that the proceeds from the- sale would be placed in escrow pending the outcome of this appeal.

. The trial court did not expressly reference Rule 54(b) in the March 2016 judgment but did state "that there is no just reason for delay in entry of judgment in accordance with the terms hereof and judgment is expressly so entered as to all matters decided herein,” Because the trial court quoted Rule 54(b), it is " ‘clear and obvious from the language used by the trial court ... that the court intended to 'enter a final order pursuant to Rule 54(b). " Baugus v. City of Florence, 968 So.2d 529, 531 (Ala. 2007) (quoting Schneider Nat'l Carriers, Inc. v. Tinney, 776 So.2d 753, 755 (Ala. 2000)).

.Even if we assume that the judicial-foreclosure and quiet-title claims have been implicitly adjudicated and/or abandoned as to that part of the Grand Bay property that was declared unencumbered in the September 2015 order, those claims might still be viable as to that part of the Grand Bay property that remained encumbered.