MAIN, Justice.
E.B. Investments, L.L.C. (“EB Investments”), appeals from an order of the Madison Circuit Court holding that Pavilion Development, L.L.C. (“Pavilion”), was entitled to redeem certain property in Madison County in which EB Investments and other parties held legal interests (appeal no. 1141259). Pavilion filed a separate appeal naming as appellees JBJ Partnership (“JBJ”), Pace Properties (“Pace”), James P. Pace, individually and as personal representative of the estate of James E. Pace, and William Byron Pace and challenging certain aspects of the same order, namely, the amount it must pay to redeem the property (appeal no. 1141416). The appeals were consolidated for the purpose *153 of issuing one opinion. As to EB Investments’ appeal, we affirm in part and dismiss the appeal in part. As to Pavilion’s appeal, we affirm in part, reverse in part, and remand.
I. Facts and Procedural History
This nearly two-decade-old case is a veteran of numerous appellate campaigns. Pavilion’s attempted redemption of the property at issue has given rise to five opinions from this Court. See Ex parte Atlantis Dev. Co., 897 So.2d 1022 (Ala. 2004); EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502 (Ala.2005); Pavilion Dev., L.L.C. v. JBJ P’ship, 979 So.2d 24 (Ala.2007) (“Pavilion I”); Pavilion Dev., L.L.C. v. JBJ P’ship, 77 So.3d 133 (Ala. 2011) (“Pavilion II”); and Pavilion Dev., L.L.C. v. JBJ P’ship, 142 So.3d 535 (Ala. 2013) (“Pavilion III”). Although the facts of this redemption case are “immensely complicated,” Pavilion III, 142 So.3d at 535, they have been recited by this Court on several occasions:
“This action was initiated on March 21, 1997, when Pavilion, then operating as John Lary, L.L.C., initiated an action to redeem 19 acres of land purchased by JBJ Partnership (‘JBJ’) at a foreclosure sale on March 22,1996....
“In August 1991, James E. Pace, James P. Pace, and William B. Pace (‘the Pace family), doing business as Pace Properties (‘Pace’), sold approximately 22 acres of unimproved property in Madison County to Gallop Enterprises, Inc. (‘Gallop’), a development company operated by Richard Tracey. The transaction was financed by Pace and in exchange for the land Gallop gave a promissory note secured by a mortgage on the property to Pace in the principal sum of $1,735,000. Gallop then obtained additional financing from Ben H. Walker, Inc. (‘Walker’), to develop a subdivision on the property, and in return Gallop gave Walker a second mortgage on the property with a principal value of $149,999. Gallop thereafter began developing the planned subdivision; however, after completing the first phase of the project and paying Pace approximately $295,990 obtained from sales of lots in the subdivision, Gallop had exhausted the funds advanced by Walker and could not proceed with the second phase of the subdivision project. Under the threat of foreclosure, Gallop filed a petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code.
“In April 1995, under the supervision of the bankruptcy court, the parties reached a settlement agreement wherein Gallop stipulated that it owed $1,439,010 to Pace and $149,999 to Walker. Pace also agreed to loan Gallop up to an additional $200,000 so that Gallop could complete development of the property and could then pay its debts to Walker and Pace with proceeds obtained from selling developed lots in the subdivision. In conjunction with the settlement agreement, Gallop executed 3 new mortgages on the 19 acres left in the development tract, which mortgages had the following priority: 1) a mortgage in favor of Pace securing a $200,000 loan (‘the development mortgage’); 2) a mortgage in favor of Walker securing the $149,999 note; and 3) a mortgage in favor of Pace securing the $1,439,010 loan. The settlement agreement and the new mortgages were all then recorded in the Madison County Probate Judge’s Office.
“By December 1995, Gallop was again in default on its obligations, and Pace instituted foreclosure proceedings. On March 22, 1996, the property was sold to JBJ—a new partnership made up of the Pace family—at a foreclosure auction for $100,000. The Pace family thereafter *154 paid off the Walker note and continued developing the property on its own, conveying parcels and interests in the property as follows:
“1) On June 6, 1996, JBJ conveyed a permanent drainage easement over a portion of the property to the City of Huntsville.
“2) On June 10, 1996, JBJ conveyed one lot to Asghar D. Pourhassani.
“3) On September 20, 1996, JBJ conveyed two lots to Atlantis Development Company, Inc. (‘Atlantis’). Atlantis thereafter executed multiple mortgages on that property in favor of Jacobs Bank[ 1] and JBJ.
“4) On January 16, 1997, JBJ conveyed another lot to Atlantis, which lot Atlantis resold to Fritz and Louise Nelson on that same day.
“On March 1, 1997, Gallop, acting through Tracey, sent a letter to JBJ stating that Gallop intended to exercise its statutory right of redemption, see § 6-5-247 et seq., Ala.Code 1975, and to redeem the 19 acres it had lost in foreclosure. Gallop accordingly requested that JBJ provide it with an itemized statement of the lawful charges it would need to pay to complete the redemption and simultaneously requested that JBJ loan Gallop those funds. On March 9, 1997, Gallop sent similar notices requesting statements of lawful charges to Pourhassani and Atlantis. On March 13, 1997, after JBJ had advised Tracey that it did not recognize his authority to exercise Gallop’s right of redemption, Tracey transferred Gallop’s right of redemption to Pavilion, a company operated by his former brother-in-law John Lary and then still known as John Lary, L.L.C., in return for $1,000.
“On March 21, 1997, Pavilion initiated this litigation by filing a redemption action in the Madison Circuit Court.[2] Both before and after filing suit, Pavilion continued to make requests for statements of charges from assorted parties with interests in the property, and some produced the requested statements. Over the following months and years, a host of counterclaims, cross-claims, and separate lawsuits encompassing all manner of contract and tort claims were filed by various parties who had interests in the property or who were otherwise drawn into the dispute. This Court has already considered some of the issues related to those claims beginning with Ex parte Atlantis Development [Co.], [897 So.2d 1022 (Ala. 2004),] in which we denied a petition for a writ of mandamus filed by Atlantis in a separate action initiated in February 2003 by JBJ and Pace claiming that Atlantis had defaulted on promissory *155 notes secured by mortgages on the property it had purchased from JBJ. In EB Investments, [L.L.C. v. Atlantis Development, Inc., 930 So.2d 502 (Ala. 2005),] we reversed in part a judgment issued in yet another separate action, this one filed in January 2004 by EB Investments (which now owned the mortgages Atlantis had originally executed in favor of Jacobs Bank) seeking to eject Atlantis from the lots Atlantis purchased from JBJ in September 1996. Finally, in August 2007, we decided an appeal in the instant action in which we reversed a summary judgment entered by the trial court in favor of JBJ and against Pavilion, holding that the trial court had erred when it concluded that Tracey lacked the authority to transfer Gallop’s right of redemption to Pavilion and holding that Pavilion did in fact hold the right to redeem the 19 acres at issue. See Pavilion [I], 979 So.2d at 37....”
Pavilion II, 77 So.3d at 134-35 (footnotes omitted).
In Pavilion III we summarized the proceedings following our remand in Pavilion I:
“On remand following our decision in Pavilion I, the trial court conducted a four-day bench trial aimed solely at deciding the merits of Pavilion’s redemption claim. Upon the conclusion of the trial and subsequent to the parties’ post-trial submissions, the trial court entered an amended final judgment that included the following summary of its findings:
“‘“In summary, the court finds that [Pavilion] is entitled to redeem the property described in its original complaint. In order to perfect and complete its redemption, Pavilion must deposit into the office of the Clerk of the Circuit Court of Madison County, Alabama, the sum of $3,770,-348.90, [2] plus all accruing interest and delinquent fees from March 10, 2010, to the date of payment, within 30 days from the date of this judgment. [Pavilion] shall be entitled to a credit against this sum for all monies it placed on deposit with the Clerk of Circuit Court of Madison County following [Pavilion’s] filing of this suit, including accrued interest. Upon payment into court of all sums required, each of the current title holders of the property to be redeemed shall deliver to the Clerk of the Circuit Court a deed conveying all of the transferors’ right, title and interest in each lot or parcel of property to [Pavilion] and shall be paid by the Clerk all sums due in accordance with this judgment. Specifically, upon redemption as set forth in this order, the Clerk is directed to distribute the funds as follows:
“ ‘ “a. $2,804,472 jointly to [the Pace family];
“ ‘ “b. $930,001 to [Atlantis];
‘““c. $35,875.99, plus all accruing interest and delinquent fees from March 10, 2010, to the date of payment to the Tax Collector of Madison County, Alabama.
“ ‘ “If [Pavilion] fails to pay all sums required by this order within 30 days from this judgment, [Pavilion] will be held to have forever waived its right to redeem the subject property. Should any posttrial motion or notice of appeal be filed in this case, all times stipulated herein shall be stayed pending resolution of such posttrial motions or appeal subject, however, to the continuation of interest on all sums due at the same rates as set forth herein, plus all accruing interest and delinquent fees from March 10, 2010 to the date of payment. All other claims for relief not specifically ad *156 dressed herein are denied. Costs are taxed as paid.” ’
“77 So.3d at 135-36. Subsequent to the entry of the above-quoted order, the trial court denied all remaining post-judgment motions and certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.; both EB Investments, L.L.C., and Pavilion appealed. See Pavilion II, 77 So.3d at 136.
"2 The amounts provided later in the trial court’s order actually total $3,770,348.99.”
Pavilion III, 142 So.3d at 537-38.
In Pavilion II, we held that the order quoted above, despite its Rule 54(b), Ala. R. Civ. P., certification, was not a final judgment because it failed to fully resolve Pavilion’s redemption claim.
“[A] judgment on Pavilion’s redemption claim should fully resolve that claim and resolve all outstanding issues concerning lawful charges and revived liens so that Pavilion can make an informed decision as to whether it wishes to complete redemption of the property or forever waive that right. The trial court’s judgment fails to do so in at least three respects. First, the trial court’s judgment fails to address the City of Huntsville’s interest in the property. Huntsville obtained from JBJ a permanent drainage easement over a portion of the property on June 6, 1996, and is accordingly entitled to compensation for that interest if Pavilion redeems the property. Pavilion may not elect to forgo redemption of Huntsville’s interest while redeeming the rest of the property because ‘[t]he law does not allow piecemeal redemption, absent an agreement providing for it,’ Costa & Head (Birmingham One), Ltd. v. National Bank of Commerce of Birmingham, 569 So.2d 360, 363 (Ala.1990), and there is no evidence indicating that the mortgage foreclosed upon contained a provision allowing for piecemeal redemption. It is unclear if Huntsville constructed any improvements to the property in accordance with its interest for which it would be due compensation, and, if it did not, the trial court may well find, as it did with the property held by [As-ghar D.] Pourhassani (who also submitted no evidence of improvements to the lot he owned), that the sum set out as being due JBJ necessarily included the amount required to redeem Huntsville’s interest also. In that case, the specific amount due Huntsville from the sum awarded JBJ could be determined after Pavilion elects to complete redemption of the property, if it in fact does so. However, in light of the possibility that Huntsville could be entitled to some compensation directly from Pavilion for lawful charges, its interest should be addressed by the trial court before we consider an appeal of a judgment deciding the redemption claim.
“Similarly, the trial court’s order fails to award any compensation to [Fritz and Louise Nelson], who, on January 16, 1997, purchased a lot from Atlantis that Atlantis had earlier purchased from JBJ. The trial court declined to award any compensation to the Nelsons because of a settlement agreement entered into by the Nelsons and Pavilion whereby Pavilion agreed not to redeem the Nelsons’ lot and the Nelsons agreed not to pursue any claims against Pavilion. However, as noted supra, ![t]he law does not allow piecemeal redemption.’ Costa & Head, 569 So.2d at 363. As this Court further explained in Shealy v. Golden, 897 So.2d 268, 272-73 (Ala. 2004):
“ ‘Once one or more tracts of land are sold at a foreclosure sale, the *157 manner in which those tracts are divided up determines the units in which those tracts “may and must” be redeemed. Redemption must be made in such units; therefore, piecemeal redemption of a portion of that unit is prohibited.’
“(Footnote omitted.) At the foreclosure sale on March 22, 1996, the property Pavilion now seeks to redeem was sold to JBJ as a single 19-acre unit for $100,000. Thus, notwithstanding the fact that JBJ later began parceling off the property, Pavilion is required to redeem the entire 19-acre tract if it wishes to redeem the property at all. The trial court indicated in its judgment that the Nelsons properly and timely provided Pavilion with a statement of charges. Following the dismissal of these appeals, the trial court should accordingly calculate the lawful charges Pavilion would owe the Nelsons in order to complete redemption of their lot.
“Finally, the trial court’s order stated that the development mortgage Gallop executed in favor of Pace as part of the April 1995 settlement agreement would be revived upon redemption and thereafter remain a superior lien upon the property. See § 6—5—248(d), Ala.Code 1975 (stating that, when ‘any [party] redeem[s], all recorded judgments, recorded mortgages, and recorded liens in existence at the time of the sale, are revived against the real estate redeemed and against the redeeming party....’). However, the trial court did not determine the balance of the loan secured by the development mortgage. The April 1995 settlement agreement originally capped the balance at $200,000; however, JBJ and the Pace family argue that the agreement was later modified, and they claim that the balance due is now $282,778. Pavilion asserts that the balance is only $154,386. Pavilion argues that the trial court’s failure to decide the balance due on the loan secured by the development mortgage would likely result in a subsequent foreclosure action involving issues intertwined with the issues in this case and that the trial court’s Rule 54(b) certification was accordingly improper. We agree that the trial court should rule on this issue before we consider an appeal of the other elements of the trial court’s judgment. Doing so will not only lessen the risk of future litigation involving these issues, but also allow Pavilion to make its decision whether to redeem the property with full knowledge of the liabilities it would be assuming by doing so.”
Pavilion II, 77 So.3d at 137-38. Because we concluded that the judgment was not final, we dismissed the appeals. 77 So.3d at 139.
Thereafter, the trial court amended the judgment to address the three unresolved issues we noted in Pavilion II:[3]
“T. The Supreme Court has directed the Court to ascertain what amount would be due to the City of Huntsville to redeem its interest in the subject property. ... Pavilion and the City of Huntsville stipulate that nothing would be owing to the City of Huntsville upon any redemption of the property, as the City paid nothing for its easement deed, has made no improvements, has paid no fees, and is not otherwise entitled to any lawful charges.
“ ‘2. This Court was further directed to calculate the lawful charges that Pavilion would owe to Fritz and Louise Nel *158 son in order to complete redemption of their lot. Pavilion and the Nelsons stipulate that the Nelsons would be owed the sale price of $47,500.00, plus $5,700.00 statutory interest, totaling $53,200.00, to redeem their interest. The Court does not address any further agreements between these parties.
“ ‘3. The Supreme Court’s final directive was to determine the balance of the loan secured by the ‘Pace Development Mortgage.’ Pavilion and the Pace defendants are in dispute on this amount. The Court agrees with the Pace defendants that under .., Section 8.01 of the bankruptcy settlement agreement previously introduced into evidence Pace had the right to apply post-default expenditures on the project to the balance available under the development note, up to a cap of $200,000.00. The undisputed evidence is that such expenses incurred by Pace exceed $200,000.00. Accordingly, and under the terms of the instruments between the parties, the lien created by the Pace development note and mortgage, which would be revived upon any redemption and thereafter remain as a superior lien on the subject property, totals $200,000.00.’ ”
Pavilion III, 142 So.3d at 541.
Although the trial court’s amended order addressed each of the issues specifically identified as unresolved in Pavilion II, in Pavilion III we identified additional outstanding issues related to Pavilion’s redemption claim and again held that the trial court’s judgment was not final. We stated:
“Although the trial court, in attempting to rectify the nonfinal status of its original order, dutifully addressed the three deficiencies specifically identified by the Court in Pavilion II, it did not address the interests of all defendants to the redemption action with regard to all parcels affected thereby.
“Instead, as both Pavilion and EB Investments agree, the trial court’s amended judgment fails, among other things, to address all the interests attached to lots 2 and 12, which Atlantis purchased post-foreclosure. Missing from the trial court’s amended judgment is a determination of the lawful charges, if any, due EB Investments and/or JBJ with regard to their respective mortgages on those properties. Both EB Investments, as successor in interest to Jacobs Bank, and JBJ hold post-foreclosure mortgages on two lots encompassed in the subject property and are defendants in this case. See § 6-5-253(a)(5), Ala,Code 1975 (providing that the ‘lawful charges’ the redeeming party must pay include mortgages on the properties subject to redemption to the extent of the purchase price). Although the trial court’s original judgment included an award to Atlantis, there is no judgment with respect to the claims of EB Investments and JBJ, who are also defendants in this action. This failure, as Pavilion notes, would require Pavilion to make a redemption decision without full knowledge of the liabilities it would be assuming by doing so, i.e., it must elect to redeem without knowing whether some additional party with an interest in the property might be held entitled to subsequent compensation from Pavilion for lawful charges accruing to that party. 77 So.3d at 138.”
142 So.3d at 542. Thus, we again dismissed the appeal as being from a nonftnal judgment.
Following our decision in Pavilion III, the trial court ordered the parties to address in writing the issues identified by this Court in Pavilion III, as well as “any issues not addressed by previous orders of *159 the trial court concerning lawful charges and revived liens that need to be resolved so that Pavilion can make an informed decision as to whether it wishes to complete redemption of the property.” On August 17, 2015, the trial court entered a new order attempting to address fully all the issues necessary to Pavilion’s redemption. The trial court adopted the findings of the previous orders except as specifically modified in its new order, which stated, in pertinent part:[4]

“Atlantis Mortgages

“Pace (JBJ) conveyed a portion of Lot 2, Block 2, Pavilion, and Lot 12, Block 1, Pavilion Phase II, to Atlantis on September 20, 1996, post-foreclosure. On that same day, Atlantis mortgaged these lots to Jacobs Bank. And also on the same day, Atlantis also executed a mortgage to JBJ for Lot 12. On December 26, 1996, Atlantis executed an additional mortgage to Jacobs Bank for Lot 12.
“All the Jacob Bank mortgages executed by Atlantis are now owned by E.B. Investments.
“In the event Pavilion elects to redeem, it must pay to E.B. Investments, as a payoff on the Atlantis mortgages owned by E.B. Investments, the sum of $558,673.36 plus interest accruing in the sum of $56.42 per diem after June 15, 2015.
“The court finds that ad valorem taxes have been assessed and unpaid on Lot 2, Block 2, Pavilion Phase I, in the amount of $51,271.76, and on Lot 12, Block 1, Pavilion Phase II in the amount of $19,593.69, and that these sums are due to be paid by Pavilion upon redemption.
“Judge Hall found that Atlantis was entitled to compensation for the value of permanent improvements made on Lots 2 and 12 (more specifically described above), and this court finds that with accumulated interest since the date of Judge Hall’s order to June 15, 2015, such compensation amounts are as follows: $541,948 as to Lot 2, and $605,717 as to Lot 12. These sums are due to be paid by Pavilion upon redemption.
[[Image here]]

“Pourhassani Lot

“On June 10, 1996, JBJ conveyed Lot 15, Block 1, Pavilion Phase II to Asghar Pourhassani. The consideration paid for the lot was $34,500. Pourhassani made no improvements to the lot. In the event Pavilion elects to redeem, it must pay Pourhassani the purchase price paid plus interest at the rate of 12 percent from the date this suit was filed. The redemption sum due is $147,750 as of June 15, 2015.
“Judge Hall’s order of May 27, 2010, determined that Pourhassani never filed an answer to the complaint and a default was entered against him. He has made no claim for reimbursement of taxes paid, and the court finds that Pavilion is not obligated to reimburse Pourhassani for any taxes paid by him on the lot.

“Nelson Lot

“Judge Vance found in his order of December 21, 2011, that Pavilion and the Nelsons stipulated that the Nelsons would be owed the sale price of $47,500, plus $5,700 statutory interest, totaling $53,200. Judge Vance’s order failed to include any sum due on redemption for the reasonable value of permanent improvements on the Nelson lot. The court finds that there were permanent *160 improvements on the lot in the sum of $141,600, and that with accrued interest Pavilion is due upon redemption to pay the Nelsons the sum of $504,823 for such improvements plus $53,200 owed for the sale price plus interest. Ad valorem taxes have been paid on this lot but there is no claim for reimbursement, and the court finds that Pavilion is not obligated to reimburse the Nelsons for any taxes paid on this lot.

“Walker Mortgage

“Judge Hall’s order of May 27, 2010, found that Pace/JBJ has paid the debt due Ben H. Walker, Inc., which was secured by a superior mortgage lien on the property in question, and that the amount paid to satisfy such mortgage was due to be paid by Pavilion upon redemption as a lawful charge. The court adopts this finding by Judge Hall.

“Pace Development

“Judge Vance found the following in his order of December 21, 2011:
“ ‘The Supreme Court’s final directive was to determine the balance of the loan secured by the “Pace Development Mortgage.” Pavilion and the Pace defendants are in dispute on this amount. The Court agrees with the Pace defendants that under Section 8.01 of the bankruptcy settlement agreement previously introduced into evidence, Pace had the right to apply posh-default expenditures on the project to the balance available under the note, up to a cap of $200,000.00. The undisputed evidence is that such expenses incurred by Pace exceed $200,000.00. Accordingly, and under the terms of the instruments between the parties, the lien is created by the Pace development note and mortgage, which would be revived upon any redemption and thereafter remain as a superior lien on the subject property, totals $200,000.00.’
“The court adopts the above finding in Judge Vance’s order of December 21, 2011, but modifies the finding to add that once revived the total lien would include interest as provided in the note.

“JBJ (Pace) Second Mortgage Foreclosed Upon

“Judge Hall’s order of May 27, 2010, found that Pavilion was due to pay Pace an unpaid principal balance on the foreclosed mortgage of $1,339,010, plus accrued interest of $1,141,056. The court adopts this finding, and further finds that additional interest has accrued through June 15, 2015, of $404,782, for a total of $2,884,848 being due from Pavilion to satisfy the principal balance and interest.
“Judge Hall also found that Pavilion was due to pay JBJ lawful charges, including ad valorem taxes and insurance premiums paid by Pace/JBJ on all the Pavilion land not transferred by JBJ after the date of the foreclosure purchase in March 1996, including the amount expended by Pace/JBJ to satisfy the Walker mortgage, these lawful charges totaling $212,406. The court adopts this finding, and further finds that interest has accrued on such charges through June 15, 2015, of $465,067, making the total sum of $677,474 due the Pace parties for these lawful charges.

“City of Huntsville

“Judge Vance found that Pavilion and the City of Huntsville stipulated that nothing would be owing to the City of Huntsville upon redemption of the subject property, as the City paid nothing for its easement deed, has made no improvements, has paid no fees, and is not *161 otherwise entitled to any lawful charges. The court adopts this finding.

“Other Taxes Assessed and/or Insurance

“Any claim for reimbursement of ad valorem taxes or insurance not addressed herein is denied due to insufficient evidence.

“Conclusions

“It is adjudged that if Pavilion elects to redeem, it shall deposit with the clerk of court the sum of $6,106,934.81 (less funds previously deposited and any interest that has accumulated thereon) plus all accruing interest at the rate of 6% per annum after June 16, 2015.
“This sum is based on the following redemption amounts due to be paid:
a. Pace Second Mortgage: $2,884,848.
b. Pace Lawful Charges: $677,474 (including satisfaction of the Walker mortgage plus interest).
c. Atlantis Lawful Charges for improvement of Lot 2 plus interest: $641,948.
d. Atlantis Lawful Charges for improvements to Lot 12 plus interest: $605,717.
e. Madison County Tax Collector for unpaid assessments on Lot 2 and Lot 12: $70,865.45.
f. E.B. Investments Mortgages: $558,673.36.
g. JBJ mortgages on Lot 12: $61,636.
h. Pourhassani Lot (purchase price and interest): $147,750.
i. Nelson Lot (purchase price and interest): $53,200.
j. Nelson Lawful Charge for improvements plus interest: $504,823.
[[Image here]]
“Upon deposit of the designated funds with the clerk of court, the parties hereto who hold an interest in the subject property shall within 14 days therefrom execute and deliver to the clerk a deed conveying their respective interest therein to Pavilion, and, where appropriate, a satisfaction of mortgage for filing in the Madison County Office of Probate ....
“If plaintiff fails to pay all sums required by this order within 30 days from the entry hereof, plaintiff will be held to have forever waived its right to redeem the subject property. Should any post-trial motion or notice of appeal be filed in this case, all times stated herein shall be stayed pending resolution of such post-trial motions or appeal subject, however, to the continuation of interest accruing in accordance with law. All claims not addressed in this order and the previous orders of the court in the matter are denied, and the court finds that no further payments shall be due by Pavilion upon redemption.”
The trial court certified the order as final pursuant to Rule 54(b), Ala. R. Civ. P. Pavilion’s Rule 59, Ala. R. Civ. P., post-judgment motion was denied on September 28, 2015. These appeals followed.
II. Standard of Review
The parties do no dispute that the applicable standard of review in these appeals is the ore tenus standard.
“Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies. Our ore tenus standard of review is well settled. ‘ “When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.” ’ Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).
*162 «(«The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘ “[WJhere the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’
“Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, ‘that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.’ Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).”
Kennedy v. Boles Invs., Inc., 53 So.3d 60, 67-68 (Ala.2010). Furthermore, where there are no disputed facts and where the judgment is based entirely upon documentary evidence, our review is de novo. Weeks v. Wolf Creek Indus., Inc., 941 So.2d 263, 268-69 (Ala.2006).
III. Analysis
A. Finality of judgment
In Pavilion II, we approved the trial court’s decision to resolve Pavilion’s redemption claim before reaching the remaining cross-claims, counterclaims, and third-party claims. 77 So.3d at 137 (“[T]he trial court did not exceed its discretion by declining to resolve all the pending claims ,.. ‘until such time as Pavilion has either perfected or waived its right to redeem [the property].”’). In both Pavilion II and Pavilion III, however, we dismissed the appeals because we concluded that, in each instance, the trial court’s order, although certified as final under Rule 54(b), did not entirely dispose of Pavilion’s redemption claim. We explained that, under the trial court’s previous orders, the failure to address certain issues concerning lawful charges and revived liens “would require Pavilion to make a redemption decision without full knowledge of the liabilities it would be assuming by doing so,” 142 So.3d at 542. Thus, we stated that “all the outstanding potential ‘interest[s] should be addressed by the trial court before we consider an appeal of a judgment deciding the redemption claim.’” 142 So.3d at 542 (quoting Pavilion II, 77 So.3d at 137).
Following Pavilion III, the trial court ordered the parties to brief all issues related to the liabilities Pavilion would be assuming upon redemption. It attempted to address each such issue in its order. Furthermore, the trial court entered a blanket denial of any claims related to Pavilion’s redemption that were not specifically addressed by its order. Again, it certified its order as final. Thus, this order fully resolved Pavilion’s redemption claim, including related lawful charges and other liabilities, and Pavilion’s redemption decision may now be made with “full knowledge of the liabilities it would be assuming by doing so.”
Pavilion, however, claims that the trial court’s order is still not a final judgment. *163 First, Pavilion argues that the judgment fails to adjudicate its redemption claim as to the City of Huntsville’s easement. That simply is not correct. As to Huntsville’s easement, the trial court stated:
“Judge Vance found that Pavilion and the City of Huntsville stipulated that nothing would be owing to the City of Huntsville upon redemption of the subject property, as the City paid nothing for its easement deed, has made no improvements, has paid no fees, and is not otherwise entitled to any lawful charges. The court adopts this finding.”
Moreover, the trial court ordered that, upon Pavilion’s payment of the redemption amount to the clerk of court, “the parties hereto who hold an interest in the subject property shall within 14 days therefrom execute and deliver to the clerk a deed conveying their respective interest therein to Pavilion....” Pavilion’s redemption claim as to Huntsville’s easement was adjudicated.
Next, Pavilion argues that the judgment is not final because Pavilion claims setoffs against the development mortgage held by Pace that it contends have not been adjudicated. The amount of the development loan was addressed by this Court in Pavilion II:
“Finally, the trial court’s order stated that the development mortgage Gallop executed in favor of Pace as part of the April 1995 settlement agreement would be revived upon redemption and thereafter remain a superior lien upon the property.... However, the trial court did not determine the balance of the loan secured by the development mortgage .... Pavilion argues that the trial court’s failure to decide the balance due on the loan secured by the development mortgage would likely result in a subsequent foreclosure action involving issues intertwined with the issues in this case and that the trial court’s Rule 54(b) certification was accordingly improper. We agree that the trial court should rule on this issue before we consider an appeal of the other elements of the trial court’s judgment.”
77 So.3d at 138.
In its most recent brief to the trial court, Pavilion argued that it was entitled to a credit against the development loan in the amount of $140,000 that JBJ had received for the sale of four lots during the redemption period. Pavilion argued that this credit and other setoffs resulted in the development loan being paid off and extinguished before the commencement of this litigation, i.e., that the balance on the development loan was $0. Despite this argument, the trial court concluded that the balance on the development loan was $200,000. Thus, rather than being left unadjudicated, Pavilion’s setoff issues were in fact adjudicated adversely to Pavilion. Accordingly, the judgment of the trial court was properly certified as final under Rule 54(b).
B. EB Investments’Appeal (Case No. 1U1259)
EB Investments raises two issues on appeal. First, it contends that the trial court’s order permitting Pavilion to redeem the property was in error because, EB Investments alleges, Pavilion did not comply with the procedures provided in the redemption statute, § 6-5-252, Ala. Code 1975. Second, EB Investments argues that the trial court improperly entered various restraining orders and injunctions that this Court should dissolve.
1. Compliance with § 6-5-252
EB Investments contends that Pavilion was not entitled to redeem the property because, it says, Pavilion did not *164 comply with § 6-5-252.[5] Specifically, it contends that Pavilion did not name all necessary parties to the redemption action within one year of the foreclosure sale.[6] Section 6-5-252 provides, in part:
“Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her. The redeeming party must then tender all lawful charges to the purchaser or his or her transferee....
“Tender or suit must be made or filed within one year from foreclosure.”
EB Investments notes that, although Pavilion’s suit was filed within one year from the foreclosure,[7] not all interested parties were initially named as defendants. A mortgagee of JBJ, Jacobs Banks, and the transferee of a drainage easement, the City of Huntsville, were not named as parties within the one-year period. Several months after the filing of its complaint, but after the one-year period, Pavilion substituted Huntsville and Jacobs Bank for fictitiously named defendants. EB Investments contends that this substitution was not effective to meet the requirement of § 6-5-252 that “suit must be ... filed within one year from foreclosure.” EB Investments continues that, because piecemeal redemption is not permitted under Alabama law, Pavilion’s alleged failure to timely add all necessary parties to its redemption action within one year of foreclosure is fatal to its redemption claim. We disagree.
We note that “[t]his Court has held that redemption statutes will be liberally construed in favor of redemption.” Watts v. Rudulph Real Estate, Inc., 675 So.2d 411, 413 (Ala.1996). EB Investments has cited no authority indicating that the relation-back principles of Rule 9(h), Ala. R. Civ, P., do not apply in a redemption action. See Peacock v. Clay, 831 So.2d 33 (Ala.Civ.App.2001) (holding that amendment substituting plaintiff related back to filing of redemption action). Nor has EB Investments established that Pavilion failed to exercise due diligence in discovering Huntsville’s and Jacobs Bank’s interests in the property. See Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983) (noting that appellant has affirmative duty of showing error upon the record and that this Court will not presume error). Accordingly, we find no error in the trial court’s order permitting Pavilion to substitute Jacobs Bank and Huntsville for fictitiously named defendants in its original complaint and relating that substitution back to the date of the filing of the redemption action.[8]
*165 2. Appeal from order granting injunc-tive relief
EB Investments also asks this Court to vacate a preliminary injunction entered by the trial court in January 2004. The preliminary injunction enjoined EB Investments from conducting any further transactions concerning the real property, subject to this litigation.[9] This preliminary injunction was an interlocutory order, and it has never been certified as a final order pursuant to Rule 54(b), Ala. R. Civ. P. As to this same order, we noted in EB Investments that, “under Rule 4(a)(1)(A), Ala. R.App. P., EB [Investments] had an appeal as of right, which it did not exercise, from ‘any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction.’ ” 930 So.2d at 509. Accordingly, EB Investments’ challenge to the interlocutory injunction is untimely. See Momar, Inc. v. Schneider, 823 So.2d 701 (Ala.Civ.App.2001). Therefore, we have no jurisdiction to entertain EB Investments’ appeal of the preliminary injunction. See Thomas v. Merritt, 167 So.3d 283, 289-90 (Ala.2013). Therefore, insofar as EB Investments purports to appeal from the preliminary injunction, the appeal is dismissed.
C. Pavilion’s Appeal (Case No. 1UU16)
Pavilion contests several aspects of the trial court’s order concerning the lawful charges due to redeem the property. We consider each argument in turn.
1. Whether the trial court erred in ordering Pavilion to pay the full amount of the Pace mortgage in order to redeem the property
Pavilion first argues that it was error for the trial court to order it to pay the full principal balance of the Pace mortgage. Section 6-5-253(a)(4) provides, in pertinent part: “If the redemption is made from a person who at the time of redemption owned the debt for which the property was sold, the redemptioner must also pay any balance due on the debt, with interest ... thereon to date.” In this case the trial court concluded that Pace and JBJ, general partnerships composed of the same three members of the Pace family, were the same legal entity. Thus, the court concluded that JBJ “owned the debt for which the property was sold” and, therefore, held that Pavilion was required to pay the full balance due on the debt in order to redeem. Pavilion does not challenge this basic holding but, rather, attacks the validity of the debt.
Pavilion contends that the $1,735,000 promissory note given by Gallop to Pace in 1991 and secured by a mortgage in the same amount represented mostly unrealized expected profit. Pavilion contends that the original 1991 Pace mortgage actually secured three things: (1) the value of the land, (2) five years’ prepaid interest, and (3) Pace’s expected future-development profit. Because no profit was actually realized on the development and because not all the interest became due prior to the foreclosure, Pavilion argues that it was error for the trial court to order Pavilion to satisfy the full principal balance of the Pace mortgage. We disagree.
In 1991, as part of an arm’s-length transaction between two business entities, Gallop executed a promissory note to Pace in the amount of $1,735,000. The note was secured by a mortgage in the same amount. In 1995, Gallop filed for bank *166 ruptcy still owing $1,439,010 on the promissory note. In a settlement agreement approved by the bankruptcy court, Gallop agreed that it was lawfully indebted to Pace in the amount of $1,439,010. Under the terms of that agreement, in order to secure the debt, Gallop gave Pace a new mortgage in the amount of $1,439,010. The bankruptcy court’s order approving the agreement specifically found that the agreement was made “in good faith and [was] the subject of arms length negotiation” in which the parties “substantially compromised their respective positions.” Whatever the merits of Pavilion’s claim that the original mortgage did not secure “current debt” because it encompassed unrealized future profit and interest, the origins of the debt are absolutely irrelevant once reduced to a judicially approved, good-faith compromise of a disputed claim. Pavilion has cited no authority supporting such a collateral attack on the court-approved bankruptcy settlement and associated mortgage.[10] See Travelers Indem. Co. of Illinois v. Griner, 809 So.2d 808, 813 (Ala.2001) (“A collateral attack of the bankruptcy court’s order is not proper.”). Accordingly, we hold that the trial court did not err in ordering Pavilion, pursuant to § 6—6—253(a)(4), to satisfy the full balance of the Pace mortgage in order to redeem the property.
2. Whether the trial court, erred in ordering Pavilion to pay post-foreclosure mortgages in an amount greater than the $100,000 foreclosure bid
Next, Pavilion argues that the trial court erred in ordering it to pay post-foreclosure mortgages beyond the $100,000 foreclosure purchase price. Section 6-5-253(a)(5), AUuCode 1975, provides:
“(5) Mortgagees of the- purchaser, or their transferees, are considered transferees of the purchaser, and a party redeeming must pay all mortgages made by the purchaser or his or her transferee on the land to the extent of the purchase price.
“If the purchaser’s mortgages do not exceed the amount of the purchase price, the balance must be paid to the purchaser.”
(Emphasis added.) The trial court’s order required Pavilion to pay $558,673.36 to satisfy the Atlantis mortgages now owned by EB Investments and to pay $61,636 to satisfy the Atlantis mortgage on Lot 12, Block 1, now held by JBJ. Because § 6-5-253(a)(5) provides that the redeeming party must pay all post-foreclosure mortgages “to the extent of the purchase price,” Pavilion contends that the trial court had no authority to require it to pay post-foreclosure mortgages beyond the $100,000 purchase price. Again, we disagree.
As noted above, the trial court concluded that Pace and JBJ were the same legal entity. Thus, JBJ was the mortgagee of the Pace mortgage foreclosed upon. We have stated that “when the mortgagee buys at foreclosure sale, the amount of the debt secured by the mortgage is treated as the purchase price rather than the amount bid.” Garvich v. Associates Fin. Servs, Co. of Alabama, Inc., 435 So.2d 30, 34 (Ala.1983). In this case, the mortgage secured a debt of $1,439,010. Accordingly, the trial court did not err in finding the full amount of the post-foreclosure mortgages constituted a lawful charge under § 6-5-253(a)(5).[11]
*167 3. Whether the trial court erred in assessing lawful charges for permanent improvements
The trial court awarded lawful charges related to houses constructed on three of the lots that were subdivided and sold during the redemption period. Atlantis constructed or partially constructed a house on lot 2 and a house on lot 12, and the Nelsons constructed a house on their lot. Pavilion argues that the construction, or partial construction, of those houses does not constitute “permanent improvements” within the meaning of § 6-5-253(a)(1).
“ ‘We have indicated that necessary permanent improvements have a well defined meaning in this jurisdiction, which is to preserve the property by properly keeping it in repair for its proper and reasonable use, having due regard for the necessities of each subject as to its kind and character. This includes not only ordinary repairs to restore the property after injury, decay, storm, flood, or fire, etc., but also valuable and useful additions and improvements to the property suited to its reasonable necessities, character and use.As to this each case is ruled by its facts.’
“[Rodgers v. Dixon], 239 Ala. [72,] 74, 193 So. [741,] 743 [ (1940) ]. In Smith v. Sulzby, 205 Ala. 301, 87 So. 823 (1921), this Court stated: ‘An improvement, generally speaking, is anything that enhances the value of the land.’ ”
Moore v. Horton, 491 So.2d 921, 923 (Ala. 1986) (emphasis omitted). In this case, we hold that the houses constructed upon lots subdivided for the purpose of residential development were “valuable and useful additions and improvements to the property suited to its reasonable necessities, character and use.” Thus, the values of those improvements was recoverable as lawful charges under § 6-5-253(a)(l).
Pavilion also contends that the trial court erred in assessing the costs of Atlantis’s improvements rather than the reasonable value of those improvements. See Southeast Enters., Inc. v. Byrd, 720 So.2d 873, 877 (Ala.1998) (holding that the trial court erred by including the costs of improvements in the redemption price rather than the reasonable value of the improvements). Here, the trial court concluded that “Atlantis has proven at trial the fair market value of the improvements made upon Lot 2, Block 2, Pavilion Phase I and Lot 12, Block 1, Pavilion Phase II.” It held that the “market value of the improvements” was $170,000. From the record before us, we cannot say that the trial court’s finding as to the value of Atlantis’s improvements was plainly and palpably wrong.
Finally, Pavilion argues that the assessment of lawful charges for Atlantis’s improvements was error because, it argues, Atlantis did not timely respond to Pavilion's demand for lawful charges. As to this issue, we conclude that there was sufficient evidence to support the trial court’s conclusion that Atlantis timely provided Pavilion with its statement of lawful charges.
4. Whether the trial court erred in including as lawful charges taxes accrued after the filing of Pavilion’s redemption action
The trial court concluded that all unpaid ad valorem taxes on lot 2 and lot *168 12, from the date of foreclosure until the entry of its judgment, were lawful charges due to be paid by Pavilion upon redemption. Further, it appears the trial court also included post-foreclosure taxes paid by JBJ after the filing of Pavilion’s redemption suit as lawful charges. Pavilion concedes that taxes paid or assessed are lawful charges under § 6-5-253(a)(2). However, it argues that the rights of the parties were fixed as of its tender of a redemption amount, made March 21, 1997. Thus, Pavilion contends that the trial court erred in assessing as lawful charges taxes that were assessed after the date of tender.
“Ordinarily, if the statutory requirements are met, the date of redemption is deemed to be the date the complaint to redeem was filed. Wallace [v. Beasley], 439 So.2d 133 [ (Ala.1983) ]. The date of redemption, however, does not occur until the redeeming party has paid or tendered the amounts due, given an adequate and valid excuse for not doing so, ‘or shown an inability to ascertain the amount due, asked the aid of the court in determining the amount, and offered to pay the amount.’ Hicklin v. Old Ship African Methodist Episcopal Zion Church, 574 So.2d 822, 826 (Ala.Civ.App.990). Literal compliance with the statute may be excused under certain circumstances; otherwise, payment is a condition precedent to redemption. See Rhoden v. Miller, 495 So.2d 54 (Ala.1986). ... The party seeking to redeem must exercise due diligence to ascertain the proper amount to be tendered, and before one side can seek the aid of the court, a bona fide disagreement between the parties regarding the lawful charges must exist. Moore [v. Horton, 491 So.2d 921 (Ala.1986) ].”
Pankey v. Daugette, 671 So.2d 684, 689-90 (Ala.Civ.App.1995).
In the present case, the trial court made the following finding of fact:
“When this suit was filed, [Pavilion] only tendered the sum of $321,714.44 to the Court even though John Lary, the principal of [Pavilion], was aware from his search of the records in the Madison County Probate Court, his review of the Gallop bankruptcy Settlement Agreement and his study of the Alabama redemption statutes that the unpaid balance due on the Gallop debt was more than $1,000,000.”
Accordingly, it appears that the trial court concluded that Pavilion did not have a valid excuse for tendering less than the amount due for redemption. Thus, the date of Pavilion’s insufficient tender cannot be considered the redemption date. Therefore, we cannot say that the trial court erred in assessing lawful charges for taxes assessed after that date.
5. Whether Pavilion was entitled to offset rent and/or waste
Pavilion contends that it was entitled to rents for Atlantis’s and the Nelsons’ use and occupancy of their lots. “[A] purchaser in possession of land as purchaser under a valid foreclosure is the absolute owner and is not chargeable with rent in respect to another whose rights were foreclosed.” Wallace v. Beasley, 439 So.2d 133, 136 (Ala.1983). In Pankey, 671 So.2d at 689, the Court of Civil Appeals held that “[the redeeming party] could demand only rents and profits collected by the [purchasers], had any been collected by them, and the [purchasers] owe no rent to [the redeeming party] for the time of their occupation of the property.” In the present case, Atlantis and the Nelsons are transferees in possession. They collected no rents. Furthermore, a redemptioner is only “ ‘entitled to all rents and profits accruing subsequent to the redemption date.’ ” Givianpour v. Curtain, 166 So.3d *169 662, 667 (Ala.2014) (quoting Pankey, 671 So.2d at 689). As explained above, the redemption date has yet to occur. Thus, Pavilion is not entitled to rental credit against the redemption price under § 6-5-258(c), Ala.Code 1975.
Pavilion also contends that it is entitled to credit for certain unspecified waste. Given Pavilion’s failure to specify the waste for which it claims it is due credit, much less the amount of credit it claims it is due, we conclude that this issue was not sufficiently presented for appellate review. See Rule 28(a)(10), Ala. R.App. P.
6. Whether the trial court properly calculated interest
Pavilion contends that the trial court assessed interest at the wrong rate. Section 6-5-258, Ala.Code 1975, provides in part:
“Anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, with interest at the rate allowed to be charged on money judgments as set forth in Section 8-8-10 (as it is now or hereinafter may be amended), and all other lawful charges, also with interest as aforesaid ....
[[Image here]]
“If the redemption is made from a person who at the time of redemption owned the debt for which the property was sold, the redemptioner must also pay any balance due on the debt, with interest as aforesaid thereon to date)’
§ 6-5-253 (emphasis added). Effective September 1, 2011, § 8-8-10, Ala.Code 1975, was amended to reduce the statutory rate of interest on money judgments from 12% per annum to 7.5% per annum. Although it is not entirely clear at what rate all the interest awarded by the trial court was calculated, it appears that the trial court calculated at least some of the interest on the purchase price and other lawful charges at the prior 12% interest rate, and, in some instances, at a 6% interest rate. The trial court should apply the statutory interest rate in effect at the time of redemption, which, here, has yet to occur. Thus, we agree with Pavilion that interest included in the redemption amount should have been calculated using the statutory rate currently in effect— 7.5% per annum—unless a contract rate of interest applies to a particular debt. Accordingly, the trial court’s judgment insofar it calculates to the interest on the lawful charges due upon redemption is reversed, and the case is remanded for the trial court to recalculate interest at the current statutory rate.
Pavilion also contends that the trial court erred in assessing interest on the value of Atlantis’s permanent improvements. Section 6-5-253, however, requires interest to be paid on all lawful charges, including permanent improvements. Thus, we reject Pavilion’s argument in this regard. Nor was it error for the trial court to compute interest through the date of redemption, which, as noted above, has yet to occur. See Pankey, 671 So.2d at 689-90; Watts v. Rudulph Real Estate, Inc., 740 So.2d 1085, 1088 (Ala.Civ.App.1998) (holding that purchaser was entitled to interest until the date of redeeming party’s valid attempt at redemption).
7. Whether there ivas a failure to join a necessary party
Pavilion also argues that the trial court erred in refusing to add John Lary, the sole member of Pavilion, as a necessary party to Pavilion’s redemption suit. In 1991, Lary, individually, obtained a judgment against Richard Tracey and Tra *170 cey Enterprises, Inc. At the time of that judgment, Tracey and/or Tracey Enterprises owned the property made the basis of this litigation. Thus, according to Pavilion, Lary’s judgment attached to the property, making him an interested party necessary to the redemption suit. However, as the appellees note, at the time the judgment was recorded, the property had already passed to Pace through foreclosure, and neither Tracey nor Tracey Enterprises held title to the property. Thus, they argue that Lary’s judgment lien never attached to the property and that he has no individual interest in the property. Pavilion has not disputed Pace’s argument. From the briefs and record before us, there is no basis on which to conclude that Lary is a necessary party.
8, Pavilion’s remaining arguments on appeal
Pavilion raises a number of other issues on appeal. Those issues include whether the trial court properly determined the balance of the Pace development loan, whether Gallop was ever in default under the bankruptcy settlement, and whether Pace provided proper notice of Gallop’s default. As to these remaining issues, however, Pavilion has cited no supporting authority.
“Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ Further, ‘it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.’ State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)). This is so, because ‘ “it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007). Accordingly, we decline to address these issues.
IV. Conclusion
With regard to the trial court’s order holding that Pavilion is entitled to redeem the property at issue, the judgment of the trial court is affirmed. To the extent that EB Investments’ appeal seeks review of interlocutory injunctive relief, the appeal is dismissed. As to Pavilion’s appeal concerning the lawful charges assessed by the trial court, the judgment is affirmed in all respects except for the trial court’s calculation of interest. As to the trial court’s award of interest, the judgment is reversed, and the case remanded for the trial court to recalculate interest at the current statutory rate.
1141259—AFFIRMED IN PART; APPEAL DISMISSED IN PART.
STUART, BOLIN, PARKER, MURDOCK, SHAW, and BRYAN, JJ., concur.
WISE, J., recuses herself.
1141416—AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
STUART, PARKER, and SHAW, JJ., concur.
BOLIN and BRYAN, JJ., concur in part and dissent in part.
*171 MURDOCK, J., dissents.
WISE, J., recuses herself.

. EB Investments is the successor-in-interest to Jacobs Bank.

. Specifically, in addition to numerous fictitiously named defendants, Pavilion’s original redemption complaint named JBJ Partnership, James Edgar Pace, James Patrick Pace, William Byron Pace, Asghar D. Pourhassani, Atlantis Development Company, Inc., and Fritz and Louise Nelson as defendants and included the following counts: a count seeking redemption and a declaratory judgment (count I) and a count seeking to quiet title to the property (count II). Pavilion later amended its complaint to include a count challenging the "lawful charges” claimed by Atlantis and the Nelsons. Subsequent amendments added as defendants the City of Huntsville, the holder of a drainage easement over a portion of the subject property, and Jacobs Bank, Atlantis’s mortgagee. EB Investments, L.L.C., is the successor in interest to Jacobs Bank. Further, by means of separate requests made pursuant to Rule 24, Ala. R. Civ. P., both E. Ray McKee, Jr., the closing attorney on the Atlantis transaction, and the Madison County tax collector, a lienholder with regard to property taxes for the 2005 tax year, sought to intervene in the redemption litigation.

. The trial in this matter was presided over by Judge Anthony Clark Hall, who issued the order addressed in Pavilion II. Following our decision in Pavilion II, the case was reassigned to Judge Robert S. Vance, Jr., who issued the order addressed in Pavilion III.

. Following our decision in Pavilion III, the case was reassigned to Judge Randall Cole. Judge Cole’s order referenced the previous two orders by date and the then-presiding trial judge.

. JBJ, Pace, and the Pace family filed an appellees’ brief in case no. 1141259 adopting EB Investments’ argument as to Pavilion’s compliance with § 6-5-252.

. EB Investments’ brief alludes to other alleged procedural deficiencies with Pavilion’s redemption lawsuit, and some of those arguments have been raised in prior appeals to this Court but have not been reached on their merits. See, e.g., Pavilion I, 979 So.2d at 39-40 (See, J., concurring specially and addressing various arguments concerning Pavilion’s compliance with § 6-5-247 et seq., Ala.Code 1975, raised by JBJ). In this appeal, however, EB Investments advances only the argument that Pavilion failed to timely name all necessary parties.

. The foreclosure occurred on March 22, 1996; the complaint for redemption was filed on March 21, 1997.

. The doctrine of relation-back presumably would not excuse a redemptioner's failure to comply with other conditions precedent to statutory redemption, such as the demand for *165 and tender of lawful charges. Such issues, however, are not now before us.

. For further background as to the preliminary injunction, see EB Investments, 930 So,2d at 504-07.

. Falls v. U.S. Savings, Loan & Bldg. Co., 97 Ala. 417, 13 So. 25 (1892), cited by Pavilion, is inapposite,

. Pavilion also argues that the award of lawful charges representing the purchase price for the Pourhassani and Nelson lots was error because those charges, combined with the *167 post-foreclosure mortgages, exceeded the $100,000 purchase price. Section 6-5-253(a)(5), however, applies only to mortgages, not to the price paid by a purchaser from the foreclosure-sale purchaser. Pavilion has not argued that a post-foreclosure purchase price paid to a foreclosure purchaser or his or her transferees is not a lawful charge under § 6-5-253. Thus, we do not address these charges.